278 N.J. Super. 580 (1995)
651 A.2d 1063
IN THE MATTER OF RAYMOND AND THERESA THOMAS, CLAIMANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1994.
Decided January 26, 1995.
*581 Before Judges KING, D'ANNUNZIO and EICHEN.
George J. Tyler argued the cause for appellants (Giordano, Halleran & Ciesla, attorneys; Paul H. Schneider, of counsel; Gregg M. Hobbie, on the brief).
Jeffrey W. Gerber argued the cause for respondents William and Alice Busch (Bressler, Amery & Ross, attorneys; David W. Reger and Lori A. Connors, on the brief).
Eileen P. Kelly, Deputy Attorney General, argued the cause for respondent State of New Jersey, Department of Environmental *582 Claims Administration, New Jersey Spill Compensation Fund (Deborah T. Poritz, Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; John M. Stanton, Deputy Attorney General, on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
The issue is whether appellants, claimants under the Spill Compensation and Control Act (the Act), N.J.S.A. 58:10-23.11 to.11z, are entitled to counsel fees as an element of "all direct and indirect damages" for which the fund is liable. N.J.S.A. 58:10-23.11g.a.
Prior to August 15, 1986, home heating oil leaked from a tank in the basement of a single-family home then owned by William and Alice Busch. The leaking oil contaminated the basement and soil beneath the residence. Mr. Busch used a substance known as "speedy dry" to soak up the oil. Eventually, he disposed of the oil-saturated speedy dry and the damaged oil tank, and scrubbed and deodorized his basement.
Mr. and Mrs. Busch sold the residence to Michael Milano, conveying title to him on August 15, 1986. Milano sold the property to appellants, Raymond and Theresa Thomas, on September 22, 1987. Thereafter, due to a continuous and pervasive odor of fuel oil, the Thomases hired a testing laboratory to take and analyze soil samples. The soil tests confirmed the presence of hydrocarbons and, eventually, the Thomases learned of the spill, which they then reported to the Department of Environmental Protection (DEP). DEP ordered removal of the contaminated soil.
Mr. and Mrs. Thomas retained counsel and sought relief in two forums. They filed an action in the Superior Court, Law Division, titled Thomas v. Milano, and also filed a claim for damages against the New Jersey Spill Compensation Fund (Fund) under the Act. Mr. and Mrs. Busch contested the claim against the *583 Fund and it was referred to arbitration. Ultimately, the Busches withdrew their objection to all aspects of the claim except the Thomases' request for attorneys' fees to be paid by the Fund. The arbitrator rejected the claim for attorneys' fees, ruling that,
neither the Act nor the regulations promulgated pursuant thereto authorize payment for an attorney's time expended in gathering and marshalling information and evidence for a claim or arbitration. (Although, conceivably, the fund could pay for attorneys' fees necessary for contracting and obtaining permits, etc., necessary for restoring the subject property.)
Mr. and Mrs. Thomas appeal, and we affirm.
The Act prohibits the discharge of petroleum and other hazardous substances. N.J.S.A. 58:10-23.11c (§ 23.11c). The Act authorizes the DEP "to clean up and remove or arrange for the cleanup and removal" of the discharged substances. § 23.11f.a(1). Alternatively, the DEP may "direct the discharger to clean up and remove, or arrange for the cleanup and removal of, such discharge." Ibid. The Act grants a right of contribution to persons who remedy a discharge "against all other dischargers and persons ... responsible for a discharged hazardous substance." § 23.11f.a(2).
The Act also creates the Fund, § 23.11i., crediting it "with all taxes and penalties related to this act." Ibid.; see § 23.11h. The Fund is strictly liable "for all cleanup and removal costs and for all direct and indirect damages no matter by whom sustained." § 23.11g.a. A claim against the Fund must be filed with the Fund's administrator "not later than one year after the date of discovery of damage." § 23.11k. The Act requires the administrator to "promote and arrange a settlement between the claimant and the person responsible for the discharge," § 23.11l., and the administrator may settle any claim against the Fund. § 23.11m. A claim against the Fund may be contested by the administrator, by persons alleged to have caused the discharge and, if the source of the discharge is unknown, by any person. § 23.11n. Contested claims are determined by arbitration. Ibid. The Fund is subrogated to the right of any successful claimant to recover from the person responsible for the discharge. § 23.11q.
*584 The Thomases contend that counsel fees incurred in preparing and presenting the claim to the Fund administrator, in litigating the claim in arbitration, and in litigating the claim in the Superior Court,[1] constitute "direct or indirect" damages which the Fund must pay under § 23.11g.a. In this opinion, we use the phrase "litigation fees" or the equivalent to refer to all those elements of the counsel fee request. The issue is one of legislative intent. "Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness and legislative history." Coletti v. Union County Freeholders, 217 N.J. Super. 31, 35, 524 A.2d 1270 (App.Div. 1987) (citing Shapiro v. Essex County Freeholder Board, 177 N.J. Super. 87, 424 A.2d 1203 (Law Div. 1980), aff'd, 183 N.J. Super. 24, 443 A.2d 219 (App.Div.), aff'd, 91 N.J. 430, 453 A.2d 158 (1982)).
We explore the Act's intent regarding counsel fees against the background of the "American rule" that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Van Horn v. City of Trenton, 80 N.J. 528, 538, 404 A.2d 615 (1979) (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141, 147 (1975)). Deeply imbedded in New Jersey jurisprudence is the principle that "legal expenses ... are not recoverable absent express authorization by statute, court rule, or contract." State, Dept. of Envtl. Protection v. Ventron, 94 N.J. 473, 504, 468 A.2d 150 (1983) (hereinafter Ventron). See Right to Choose v. Byrne, 91 N.J. 287, 316, 450 A.2d 925 (1982); Van Horn v. City of Trenton, supra; Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 301, 225 A.2d 328 (1966). The principle is codified in R. 4:42-9(a), which states that, subject to specific exceptions, "[n]o fee for legal services shall be allowed in the taxed costs or *585 otherwise." A claim against the Fund is not one of the exceptions in the court rules.
Appellants base their counsel fee claim on § 23.11g.a, which provides:
a. The fund shall be strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages no matter by whom sustained, including but not limited to:
(1) The cost of restoring, repairing, or replacing any real or personal property damaged or destroyed by a discharge, any income lost from the time such property is damaged to the time such property is restored, repaired or replaced, and any reduction in value of such property caused by such discharge by comparison with its value prior thereto;
(2) The cost of restoration and replacement, where possible, of any natural resource damaged or destroyed by a discharge;
(3) Loss of income or impairment of earning capacity due to damage to real or personal property, including natural resources destroyed or damaged by a discharge; provided that such loss or impairment exceeds 10% of the amount which claimant derives, based upon income or business records, exclusive of other sources of income, from activities related to the particular real or personal property or natural resources damaged or destroyed by such discharge during the week, month or year for which the claim is filed;
(4) Loss of tax revenue by the State or local governments for a period of 1 year due to damage to real or personal property proximately resulting from a discharge;
(5) Interest on loans obtained or other obligations incurred by a claimant for the purpose of ameliorating the adverse effects of a discharge pending the payment of a claim in full as provided by this act.
[Emphasis added.]
Counsel fees are not one of the specified elements of recovery in § 23.11g. and that section contains no "express authorization" for the Fund to pay counsel fees for services rendered in prosecuting a claim against the Fund. The statutory authorization to pay "for all direct and indirect damages" does not qualify as an "express authorization" to pay a claimant's litigation fees.
The only express authorization in the Act for the payment of counsel fees is in § 23.11.n., the section requiring the arbitration of contested claims. Paragraph g. of § 23.11n. provides that the arbitrator's determination "shall be final," but authorizes judicial review "in the Appellate Division of the Superior Court." § 23.11n.g. Paragraph h. provides that "[i]n any case in which the person responsible for the discharge seeks judicial review, reasonable *586 attorney's fees and costs shall be awarded to the claimant if the decision of the board [of arbitration] is affirmed." § 23.11n.h. Thus, the Legislature demonstrated that it had considered counsel fees and had expressly authorized a counsel fee award in only one limited circumstance. That fact bespeaks a legislative intent to follow the "American rule," that in all other circumstances regarding claims against the Fund, each party pays its own litigation expenses. Cf. Shapiro v. Essex County Freeholder Board, supra, 177 N.J. Super. at 94, 424 A.2d 1203 (express mention of one thing implies the exclusion of other things; this principle, expressio unius, is an aid in determining legislative intent), aff'd, 183 N.J. Super. 24, 443 A.2d 219 (App.Div.), aff'd, 91 N.J. 430, 453 A.2d 158 (1982).
Another indicia of legislative intent not to include litigation fees as an element of "direct and indirect damages" is the adoption of L. 1991, c. 372. It amended § 23.11f. of the Act by providing a right of contribution to persons who remedy a discharge, against another person responsible for the discharge. § 23.11f.a(2). It also empowered the DEP to,
authorize parties who have entered into an agreement with the department to clean up and remove or arrange for the cleanup and removal of a hazardous substance and who seek contribution, to collect treble damages from any contribution defendant who has failed or refused to comply with any directive, was named on the directive, and who is subject to contribution pursuant to this subsection.
[§ 23.11fa(3).]
The rationale for the grant of authority to collect treble damages is germane to the present case and was expressed in the Senate Environmental Quality Committee Statement regarding the bill:
Because the high costs of litigation, such as counsel and expert witness fees, often act as disincentives for contribution actions, and thus negate the right, this committee substitute allows contribution plaintiffs who enter into settlement agreements with DEP to recover treble damages from the nonsettling parties to encourage early settlements. The DEP would determine when a contribution plaintiff could seek to recover treble damages, thereby ensuring that contribution plaintiffs not use this right to extract unfair settlements.
Despite the committee's awareness of and concern regarding the "high costs of litigation," it did not authorize an award of counsel *587 fees to a party seeking contribution. Instead, it recommended a treble damage award as a means of recouping those expenses, and only in narrowly defined circumstances.
Finally, we note that our determination is consistent with Ventron, supra, 94 N.J. at 473, 468 A.2d 150, which involved an action by the DEP against multiple defendants seeking to impose on defendants the financial responsibility for the cleanup and removal of mercury pollution in the Hackensack Meadowlands. Ventron Corporation, one of the defendants, had sold part of the polluted property to the Wolfs, who were also defendants. Id. at 485, 468 A.2d 150. The trial court granted judgment in favor of the Wolfs on their cross-claim against Ventron. Id. at 486, 468 A.2d 150. The trial court determined that the Wolfs were not liable for the pollution and that Ventron fraudulently had failed to disclose the pollution to the Wolfs. Ibid. The judgment in favor of the Wolfs included an award of costs and counsel fees incurred by them in their defense of the DEP action. Ibid. The Supreme Court reversed the award of counsel fees, characterizing as "an open question whether it was Ventron's fraud or the Wolfs' own acts, or both, that caused the Wolfs to incur counsel fees in defense of the DEP action." Id. at 505, 468 A.2d 150. The Court remanded for further proceedings regarding the counsel fee issue, ruling that "[t]he Wolfs may not recover the part of their counsel fees attributable to defending their own acts. Nor may they recover the portion of the counsel fees incurred in prosecuting their own claim against Ventron." Ibid.
We conclude that the Legislature did not intend that the Fund would compensate a claimant for legal services rendered in the preparation, presentation and litigation of a claim against the Fund under the Act.
As previously indicated, the arbitrator, in a parenthetical sentence, indicated that "conceivably, the fund could pay for attorneys' fees necessary for contracting and obtaining permits, etc., necessary for restoring the subject property." We agree that to the extent legal services are necessary to remediate an environmental *588 insult and, therefore, would constitute "cleanup and removal costs" under § 23.11g., as defined in § 23.11b(d),[2] then the cost of those legal services could be payable out of the Fund. For example, in an arbitration under the Act, brought to our attention by appellants, a municipal utilities authority had to build a water supply and distribution system to provide water to residences whose groundwater supply had been contaminated by a discharge of hazardous substances. The parties agreed that fees for legal and engineering services necessary to the construction of the new water system were collectable as costs of remediation.[3] In the present case, there is nothing in the record to establish that any of the legal services rendered to appellants fall into the category of remediation.
Whether the Thomases are entitled to counsel fees in the Superior Court litigation is not before us.
Affirmed.
NOTES
[1] The rationale advanced by the Thomases for recovery of fees for services rendered in the Superior Court litigation is that "the discovery obtained in that litigation was used in the arbitration, avoiding the need for separate discovery for the arbitration."
[2] N.J.S.A. 58:10-23.11b(d) provides:

`Cleanup and removal costs' means all costs associated with a discharge, incurred by the State or its political subdivisions or their agents or any person with written approval from the department in the: (1) removal or attempted removal of hazardous substances, or (2) taking of reasonable measures to prevent or mitigate damage to the public health, safety, or welfare, including, but not limited to, public and private property, shorelines, beaches, surface waters, water columns and bottom sediments, soils and other affected property, including wildlife and other natural resources, and shall include costs incurred by the State for the indemnification and legal defense of contractors pursuant to sections 1 through 11 of P.L. 1991, c. 373 (C. 58:10-23.11f8 through 58:10-23.11f18).
[3] Legal services for such a project would include the drawing of ordinances, acquisition of land and rights of way, drawing and administering construction contracts, and legal work connected with any necessary financing.