711 A.2d 932

LACEY MUNICIPAL UTILITIES AUTHORITY, PETITIONER–AP-
PELLANT, v. NEW JERSEY DEPARTMENT OF ENVIRON-
MENTAL PROTECTION, ENVIRONMENTAL CLAIMS ADMIN-
ISTRATION, SPILL COMPENSATION FUND, RESPONDENT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 20, 1998—Decided June 4, 1998.

Before Judges SHEBELL, D'ANNUNZIO and A.A. RODRIGUEZ.

*Jerry J. Dasti,* argued the cause for appellant (*Dasti, Murphy & Wellerson, P.C.,* attorneys; *Mr. Dasti* and *Gregory P. McGuckin,* on the brief).

*Mark D. Oshinskie,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mr. Oshinskie,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

This is an appeal from the January 3, 1995 denial by the Administrator of the Spill Compensation Fund (Fund) of two Spill Fund claims brought by the Lacey Municipal Utilities Authority (Lacey) on the ground that they were filed "later than one year from the date of discovery of damage" contrary to *N.J.S.A.* 58:10–23.11k. We reverse as to both claims and remand to the Fund for consideration of the merits of the claims.

On November 18, 1986, and January 6, 1987, a residential potable well located at 331 Constitution Drive, Lacey Township, in the area designated as MUA Zone 12, was discovered to contain benzene, a hazardous substance, in excess of the level established as acceptable for drinking purposes. Subsequent potable well water sampling found a total of thirteen (13) residential potable wells within Zone 12 to be contaminated with excessive levels of benzene, toluene, xylene and mercury, all hazardous substances. On February 28, 1991, petitioner filed a Spill Fund claim, seeking "reimbursement of costs incurred" by having its water supply lines extended into Zone 12.

In July, 1990, a residential potable well located in the Lanoka Harbor section of Lacey Township, in the area designated as MUA Zone 10, was discovered to contain trichloroethylene (TCE), a hazardous substance, in excess of the level established as acceptable for drinking purposes. Subsequent potable well water sampling found a total of twenty-five (25) residential potable wells

within Zone 10 to be contaminated with excessive levels of TCE, 1,1, dichloroethylene, 1,2, dichloroethylene, tetrachloroethylene and carbon tetrachloride, all hazardous substances. On June 22, 1992, petitioner filed a Spill Fund claim, seeking "reimbursement of costs incurred" by having its water supply lines extended into Zone 10.

On January 3, 1995, the administrator issued Notices of Intent to deny the claims citing *N.J.S.A.* 58:10–23.11k, which states that "Claims shall be filed with the administrator not later than one year after the date of discovery of damage." Lacey, in accordance with *N.J.S.A.* 58:10–23.11n, requested arbitration, and the matter was transferred to the Office of Administrative Law. A motion by the Administrator for summary decision was denied by the arbitrator and, on July 8 and 9, 1996, a hearing was conducted.

On December 18, 1996, the arbitrator issued his final decision. With respect to the primary issue in the case, namely, whether petitioner's claims were time-barred by *N.J.S.A.* 58:10–23.11k, the arbitrator noted that the "facts for purposes of that question were undisputed":

> Petitioner sought reimbursement for two water projects within Lacey Township, known as zone 10, ... and zone 12. .. In July 1990 hazardous substances in excess of safe drinking water standards were discovered in zone 10. Petitioner solicited bids for a water extension project into this area on January 2, 1991, a contract was awarded on January 23, 1991, and construction began on May 2, 1991. The zone 10 claim was filed on June 22, 1992, and sought $181,834. The first contaminated wells were discovered in zone 12 during the latter part of 1986 and into 1987. Petitioner solicited bids for a water transmission main on November 20, 1989, the first contract was entered into on December 20, 1989, and construction began on February 18, 1990. Petitioner filed its zone 12 claim on February 28, 1991, seeking reimbursement of $746,540.

Recalling his prior conclusion in denying summary decision because "petitioner discovered its damage when it committed to supply water into zones 10 and 12 and that a clear manifestation of this commitment came when it contracted to extend water lines into these areas," the arbitrator repeated his conclusion that "petitioner's zone 10 and zone 12 applications are untimely."

As to Lacey's assertion "that its prior dealings with respondent led it reasonably to conclude that claims would be reviewed without strict attention to the statute of limitations," the arbitrator noted that while it was "true that the then administrator used the commencement of construction as the discovery date of damage and thus interpreted the Act liberally to favor petitioner" with regard to its 1988 Spill Fund claims for Zone 2 and Zone 6, the arbitrator found that this did not suggest a waiver by the administrator of the one-year statute of limitations in *N.J.S.A.* 58:10–23.11k, or that the administrator "lulled . . . [Lacey] into believing that the statute of limitations would not apply." The arbitrator denied both of petitioner's claims, concluding "that petitioner's zone 10 and zone 12 applications were untimely and that respondent did not contribute to this in any substantial way."

# I

█ We first consider Lacey's contention, raised for the first time on appeal, that denial of the claims is "incorrect as a matter of law" because petitioner, "as a political subdivision of the State of New Jersey, has 10 years to pursue this civil claim in accordance with the clear and unambiguous language utilized by the Legislature in *N.J.S.A.* 2A:14–1.2." The New Jersey Department of Environmental Protection (DEP) responds that Lacey "cannot rely on *N.J.S.A.* 2A:14–1.2 to establish that it has ten years to file its . . . Spill Fund claims" because, in *N.J.S.A.* 58:10–23.11k, the Legislature "clearly and unmistakably established a one-year limitation period for the filing of Spill Fund claims." We agree.

*N.J.S.A.* 2A:14–1.2 (*L.* 1991, *c.* 387, § 2) provides as follows:

a. *Except where a limitations provision expressly and specifically applies to actions commenced by the State* or where a longer limitations period would otherwise apply, and subject to any statutory provisions or common law rules extending limitations periods, any civil action commenced by the State shall be commenced within ten years next after the cause of action shall have accrued.

b. For purposes of determining whether an action subject to the limitations period specified in subsection a. of this section has been commenced within time, no such action shall be deemed to have accrued prior to January 1, 1992.

c. As used in this act, the term "State" means the State, its political subdivisions, any office, department, division, bureau, board, commission or agency of the State or one of its political subdivisions, and any public authority or public agency, including, but not limited to, the New Jersey Transit Corporation and the University of Medicine and Dentistry of New Jersey.

[Emphasis added.]

*N.J.S.A.* 2A:14–1.2 was approved on January 16, 1992, to take effect immediately. *L.* 1991, *c.* 387 § 3.

The Senate Judiciary Committee statement for Senate Bill No. 3741 (*L.* 1991, *c.* 387) sets forth the following:

Under the common law doctrine of nullum tempus, the State and its agencies were exempt from statutes of limitations generally applicable in civil actions. In a series of recent decisions, the New Jersey Supreme Court has abolished the nullum tempus rule. The effect of these decisions is to subject the State to the same limitations periods applicable to private litigants. This bill proposes to establish a uniform ten-year statute of limitations for actions commenced by governmental entities.

This ten-year period would apply *unless another statute expressly provides a different period for actions commenced by the State.* As in the case of private litigants, statutory provisions extending limitations periods under particular circumstances would extend the ten-year period where applicable. The bill would also provide that in no case would the ten-year period be deemed to have begun prior to January 1, 1992.

Under the bill, "State" is defined to include not only the State but also its political subdivisions, and their departments, divisions, agencies, bureaus, boards, commissions or offices, including public authorities and public agencies.

[Emphasis added.]

In *Department of Environmental Protection v. Larchmont Farms, Inc.,* 266 *N.J.Super.* 16, 628 *A.*2d 761 (App.Div.1993), *certif. denied,* 135 *N.J.* 302, 639 *A.*2d 301 (1994), we rejected defendants' argument that the "claims brought by the [Department of Environmental Protection and Energy (DEPE)]" on January 31, 1992, were "barred by the two-year statute of limitations set forth in *N.J.S.A.* 2A:14–10." *Id.* at 30, 34, 628 *A.*2d 761. Instead, we ruled that the action by the DEPE, pursuant to the Pesticide Control Act of 1971, *N.J.S.A.* 13:1F–1 to –18, was controlled by the ten-year statute of limitations set forth in *N.J.S.A.* 2A:14–1.2. *Id.* at 34, 628 *A.*2d 761. Therefore, we reversed the order dismissing DEPE's complaint without prejudice and remanded the matter to the Chancery Division for a

hearing for the assessment of penalties pursuant to the Pesticide Act. *Id.* at 34–35, 628 *A.*2d 761. We explained that DEPE's action under the Pesticide Act was not time-barred by *N.J.S.A.* 2A:14–10, because

> [I]t is not "expressly and specifically clear" that the two-year statute of limitations set forth in *N.J.S.A.* 2A:14–10 applies to actions brought under the Pesticide Act, and therefore, this action by the DEPE was controlled by the ten-year statute of limitations set forth in *N.J.S.A.* 2A:14–1.2.
>
> [266 *N.J.Super.* at 34, 628 *A.*2d 761.]

In *State v. Cruz Construction Co., Inc.,* 279 *N.J.Super.* 241, 652 *A.*2d 741 (App.Div.1995), defendants filed motions to dismiss the State's complaint, demanding damages for breach of contract "on the ground that the claims asserted against them were barred by the ten-year limitation period of *N.J.S.A.* 2A:14–1.1," which barred a complaint thereunder if brought "more than 10 years after the ... construction." *Id.* at 243–44, 652 *A.*2d 741. Primarily, the trial judge denied their motions because, in view of *Rutgers v. The Grad Partnership,* 269 *N.J.Super.* 142, 634 *A.*2d 1053 (App.Div. 1993), *certif. denied,* 135 *N.J.* 470, 640 *A.*2d 851 (1994), "the State's claims were insulated from the operation of *N.J.S.A.* 2A:14–1.1, and, therefore, were not time-barred by the statute." *Id.* at 243–44, 652 *A.*2d 741. We granted defendants leave to appeal, but affirmed the order denying their motions to dismiss the State's complaint. *Id.* at 242–43, 248–50, 652 *A.*2d 741. We stated:

> In *Larchmont,* we stated that *N.J.S.A.* 2A:14–1.2 applies to actions brought by the government, unless it is "expressly and specifically" clear that another limitations period applies. *See Larchmont, supra,* 266 *N.J.Super.* at 34, 628 *A.*2d at 761. We held that[,] since there was no express and clear language that *N.J.S.A.* 2A:14–10 applied to actions brought by the Department of Environmental Protection under the Pesticide Act, the ten-year statute of limitations under *N.J.S.A.* 2A:14–1.2 applied to its claim. *Id.* Applying the *Larchmont* reasoning to the facts of this case, since it is not "expressly and specifically" clear that *N.J.S.A.* 2A:14–1.1 applies to the State, we hold that the State's action is controlled by the ten-year statute of limitations of *N.J.S.A.* 2A:14–1.2.
>
> [279 *N.J.Super.* at 248–49, 652 *A.*2d 741.]

In contrast, in *New Jersey Transit Corporation v. Borough of Somerville,* 139 *N.J.* 582, 661 *A.*2d 778 (1995), the Supreme Court held that "*N.J.S.A.* 2A:14–1.2 is inapplicable to the State or its constituent parts in challenges to real-property tax assessments."

*Id.* at 592, 661 *A.*2d 778. The Court stated that the "Legislature could not have intended *N.J.S.A.* 2A:14–1.2 to give governmental entities a longer statute of limitations than they previously had enjoyed." *Id.* at 588, 661 *A.*2d 778. According to the Court, the statute of limitations previously enjoyed by the State and its constituent parts was set forth in *N.J.S.A.* 54:3–21. *Id.* at 592, 661 *A.*2d 778. The Court explained:

> We have previously interpreted "taxpayer feeling aggrieved" in *N.J.S.A.* 54:3–21 broadly to include all entities having an interest in the real property that is the subject of a property tax assessment. . . . No cases support Transit's claim that state instrumentalities are not "taxpayers" within the meaning of the statute.
>
> [139 *N.J.* at 588, 661 *A.*2d 778 (citations omitted).]
>
> It is a well established precept of statutory construction that when two statutes conflict, the more specific controls over the more general. . . . *N.J.S.A.* 54:3–21 establishes a detailed procedure whereby aggrieved taxpayers can appeal a property assessment. The statute sets a date by which the taxpayer must file a complaint to a county board of taxation.
>
> [139 *N.J.* at 591, 661 *A.*2d 778 (citations omitted).]
>
> Conversely, *N.J.S.A.* 2A:14–1.2 provides an extended limitations period for all civil actions commenced by the State, except where a limitations provision expressly applies to actions by the State. That statute does not specifically delineate which State actions are governed by the statute and which are not. Rather, that statute applies generally to all State claims not expressly controlled by other statutory limitation periods. Since *N.J.S.A.* 54:3–21 is much more specific than *N.J.S.A.* 2A:14–1.2, the former prevails over the latter.
>
> We therefore hold that *N.J.S.A.* 2A:14–1.2 is inapplicable to the State or its constituent parts in challenges to real-property tax assessments. The Legislature determined in *N.J.S.A.* 54:3–21 that aggrieved taxpayers must file their petitions of appeal on or before . . . August 15 . . . of the tax year. We have held that the State is a taxpayer under that statute. Nothing in the legislative history of *N.J.S.A.* 2A:14–1.2 indicates that the Legislature intended thereby to overturn the otherwise then-accepted conclusion that the State, *qua* taxpayer, must adhere to the specific limitations periods contained in *N.J.S.A.* 54:3–21. Consequently, the State falls within the specific and express limitations period in *N.J.S.A.* 54:3–21.
>
> [139 *N.J.* at 591–92, 661 *A.*2d 778.]

In the present case, Lacey was established under and exists in accordance with the Municipal and County Utilities Authorities Law, *N.J.S.A.* 40:14B–1 to –69. Pursuant to *N.J.S.A.* 40:14B–3(5), a "municipal authority" includes a "municipal utilities authority created by one or more municipalities." *N.J.S.A.* 40:14B–20 states that "[e]very municipal authority shall be a public body politic and

corporate, constituting a political subdivision of the State." *See also Jordan v. Zidel*, 40 *N.J.* 244, 247, 191 *A.*2d 178 (1963) (noting that a municipal utilities authority is a "political subdivision of the State"). Thus, Lacey is a "political subdivision of the State." Given this, it is undisputed that petitioner is within the definition of "State" in *N.J.S.A.* 2A:14-1.2(c), which defines that term in *N.J.S.A.* 2A:14-1.2 as meaning the State and "its political subdivisions."

■■■ Lacey's claim against the Spill Fund is a "civil action," as that term is used in *N.J.S.A.* 2A:14-1.2. "[C]ivil action" in *N.J.S.A.* 2A:14-1.2 encompasses "civil claims" by a political subdivision of the State "against public entities," such as petitioner's Spill Fund claims here. *New Jersey Transit, supra*, 139 *N.J.* at 591, 661 *A.*2d 778.

Significantly, the Spill Act (*L.* 1976, *c.* 141) was initially enacted on January 6, 1977. The effective date of the Spill Act was April 1, 1977. *L.* 1976, *c.* 141, § 29. Under *N.J.S.A.* 58:10-23.11g(a), the Spill Fund is "strictly liable, without regard to fault, for all cleanup and removal costs and for direct and indirect damages no matter by whom sustained." *N.J.S.A.* 58:10-23.11g; *Handy & Harman v. Bor. of Park Ridge*, 302 *N.J.Super.* 558, 563, 695 *A.*2d 747 (App.Div.), *certif. denied*, 152 *N.J.* 10, 702 *A.*2d 349 (1997); *Enertron Industries, Inc. v. Mack*, 242 *N.J.Super.* 83, 91, 576 *A.*2d 28 (App.Div.1990).

*N.J.S.A.* 58:10-23.11k, as amended by *L.* 1984, *c.* 142, § 3, provides as follows:

> Claims shall be filed with the administrator not later than one year after the date of *discovery of damage*. The administrator shall prescribe appropriate forms and procedures for such claims, which shall include a provision requiring the claimant to make a sworn verification of the claim to the best of his knowledge. Any *person* who knowingly gives or causes to be given any false information as a part of any such claim shall, in addition to any other penalties herein or elsewhere prescribed, be guilty of a misdemeanor. Upon receipt of any claim, the administrator shall as soon as practicable inform all affected parties of the claim.

> [Emphasis added.]

We are satisfied that the question of whether *N.J.S.A.* 2A:14–1.2 established a ten year statute of limitations for governmental entities that applies to claims against the Spill Fund is controlled by the Supreme Court's holding in *New Jersey Transit, supra.* The Court's finding, that "[t]he Legislature could not have intended *N.J.S.A.* 2A:14–1.2 to give governmental entities a longer statute of limitations than they had previously enjoyed," is just as applicable here. 139 *N.J.* at 588, 661 *A.*2d 778. The Legislature made clear its intent to subject claims against the Fund by the State and its political subdivisions to the one year limitation for the filing of claims by using the term "person" in *N.J.S.A.* 58:10–23.11k. "Person" is defined in *N.J.S.A.* 58:10–23.11b to include governmental entities. This provision was enacted in 1977, notwithstanding the fact that, at that point in time, statute of limitations generally were not applicable to the government under the *nullum tempus* doctrine. *New Jersey Educ. Facilities Auth. v. Gruzen Partnership,* 125 *N.J.* 66, 592 *A.*2d 559 (1991). Thus, the one year limitation for filing Spill Act claims is applicable to the State, its subdivisions, and its agencies, as it was not the Legislature's intent in enacting *N.J.S.A.* 2A:14–1.2 to give governmental entities a longer statute of limitations than previously enjoyed. *New Jersey Transit, supra,* 139 *N.J.* at 588, 661 *A.*2d 778.

## II

We, therefore, turn to the question of whether Lacey filed timely under *N.J.S.A.* 58:10–23.11k. Lacey stresses that what is involved here is a claim for reimbursement of costs "in accordance with the provisions of *N.J.A.C.* 7:1J–3.1."

*N.J.A.C.* 7:1J–1.4 defines a "Water Supply System Claim" as a "claim (whether asserted by a water purveyor or any other person) for compensation for construction and ancillary costs associated with providing an alternative supply of water required because of damage to an existing supply of water caused by a discharge of a hazardous substance." *N.J.A.C.* 7:1J–1.4 defines a

"water purveyor" as a "person which owns, operates, manages or controls a water supply system, plant or equipment." Under *N.J.A.C.* 7:1J–1.4, a "person" includes the "State of New Jersey and its agents and any of the political subdivisions of or found within the State of New Jersey."

The term "cleanup and removal costs" in *N.J.S.A.* 58:10–23.11g(a) is defined in *N.J.S.A.* 58:10–23.11b as meaning "all costs associated with a discharge, incurred by the State or its political subdivisions or their agents or any person" in, among other things, the "taking of reasonable measures to prevent or mitigate damage to the public health, safety or welfare, . . . ." The terms "damage" and "date of discovery of damage" in *N.J.S.A.* 58:10–23.11k are *not* defined in *N.J.S.A.* 58:10–23.11b, nor are the statutory terms "claim" and "claimant."

Water Supply System Claims are "eligible for compensation from the Fund." *N.J.A.C.* 7:1J–3.1(a). DEP acknowledges that the claims involved here are "water supply claims."

In material part, *N.J.A.C.* 7:1J–3.2 provides as follows:

(a) No costs expended by a claimant in connection with a WSSC [Water Supply System Claim] are compensable by the Fund unless they are either:

. . . .

2. Directly associated with supplying potable water to real property in an area within or outside the SFCA for which the Department has determined, pursuant to the Safe Drinking Water regulations set forth at *N.J.A.C.* 7:10, that the existing source of potable water is unsuitable for human consumption due to a discharge. . . .

The term "SFCA" is the abbreviation for "Spill Fund Claims Area," which means the "geographic area delineated by the Department pursuant to *N.J.A.C.* 7:1J–3.6." *N.J.A.C.* 7:1J–1.4. Under *N.J.A.C.* 7:1J–3.6, the SFCA is defined as the geographic area "consisting of the currently known extent of ground water pollution determined by the Department pursuant to *N.J.A.C.* 7:1J–3.7, combined with the most probable pollution migration zone determined by the Department pursuant to *N.J.A.C.* 7:1J–3.8."

In *Matter of Thomas,* 278 *N.J.Super.* 580, 651 *A.*2d 1063 (App. Div.), *certif. denied,* 141 *N.J.* 95, 660 *A.*2d 1194 (1995), we indicat-

ed that, if a municipal utilities authority "had to build a water supply and distribution system to provide water to residences whose groundwater supply had been contaminated by a discharge of hazardous substances," this would constitute "services ... necessary to remediate an environmental insult and, therefore, would constitute 'cleanup and removal costs' under § 23.11g, as defined in § 23.11b." 278 *N.J.Super.* at 587–88, 651 *A.*2d 1063. Because these services would fall into the "category of remediation," we indicated that the municipal utilities authority's costs that were "necessary to the construction of the new water system" would be payable out of the Spill Fund as "costs of remediation." *Id.* at 583, 651 *A.*2d 1063.

DEP acknowledges that this appeal involves a "Spill Fund claim for the cost of extending a waterline, ostensibly to address groundwater contamination," specifically stating:

> LMUA seeks payment of two ... Spill Fund claims. The first of these claims seeks reimbursement for the cost of extending LMUA water lines to a geographic area known as Zone 12. The second claim [seeks reimbursement for the cost of the] extension of water lines to a geographic area known as Zone 10.

[4–6] We conclude that petitioner's two Spill Fund claims for reimbursement of the costs it incurred in extending its water lines into Zone 10 and Zone 12 are timely as the one year time limitation did not commence to run until Lacey actually expended the costs for which it seeks reimbursement. Two principles of statutory construction guide our conclusion: 1) "statutes should be interpreted in accordance with their plain meaning," *Munoz v, New Jersey Automobile Full Ins. Underwriting Assoc.,* 145 *N.J.* 377, 384, 678 *A.*2d 1051 (1996); and that " '[i]n discerning ... intent we consider not only the particular statute in question, but also the entire Legislative scheme of which it is a part,' " *Cornblatt v. Barow,* 153 *N.J.* 218, 234, 708 *A.*2d 401 (1998) (quoting *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987)). Our conclusion is consistent with the regulations adopted by the Department pertaining to the "Processing of Damage Claims pursuant to the Spill Compensation and Control Act." *N.J.A.C.* 7:1J–1.1 –9.24.

The regulations, effective January 4, 1993, provide that they "shall apply to the processing of all claims which have not been paid, settled or denied on or before the operative date of this chapter, notwithstanding the date upon which any such claim was filed with the Department." *N.J.A.C.* 7:1J–1.2(b). We consider the regulations to be applicable to Lacey's claim as it was neither paid, settled, or denied before January 4, 1993.

*N.J.A.C.* 7:1J–3.1(a) states that "Water Supply Systems Claims (WSSCs) are eligible for compensation from the Fund only in accordance with the requirements of this chapter." The "provisions of *N.J.A.C.* 7:1J–1, 2, *6*, 7, 8 and 9 are applicable to all claims made pursuant to this chapter, including without limitation water supply system claims pursuant to *N.J.A.C.* 7:1J–3." *N.J.A.C.* 7:1J–2.2 (emphasis added). *N.J.A.C.* 7:1J–6.1, in pertinent part, says: "Claimants shall submit any claims to the Department not later than one year after the date of discovery." *N.J.A.C.* 7:1J–1.4 defines "claim" as meaning "a claim for damages filed with the Department for recovery from the Fund."

Lacey's claim, as a subdivision of the State, is for "clean up and removal costs" as defined in *N.J.A.C.* 7:1J–1.4. "Clean up and removal costs" are defined by *N.J.A.C.* 7:1J–1.4 to mean "all costs associated with a discharge *incurred* by the State, or its political subdivisions, or their agents . . . ." [Emphasis added]. Pursuant to *N.J.A.C.* 7:1J–1.4, the term "damages" is meant to include "all cleanup and removal costs and all direct and indirect damages *actually incurred*, no matter by whom sustained, arising in connection with a discharge of a hazardous substance, or in connection with a threatened discharge . . ." [Emphasis added]. Costs and damages include Water Supply System Claims to the extent that a water purveyor, such as Lacey, may expend costs in an area delineated as SFCA. *N.J.A.C.* 7:1J–3.1. The expense must be "[d]irectly associated with supplying potable water to real property in an area within or outside the SFCA for which the Department has determined . . . that the existing source of potable water

is unsuitable for human consumption due to a discharge." *N.J.A.C.* 7:1J–3.2(a)1 and 2.

While it is incumbent upon Lacey to demonstrate that the costs it expended in connection with its Water Supply Systems Claim are compensable under the provisions of *N.J.A.C.* 7:1J–3.2, it is clear under the plain meaning of the regulations that damages are those "clean up and removal costs and all direct and indirect damages *actually incurred*." *N.J.A.C.* 7:1J–1.4; *Munoz, supra,* 145 *N.J.* at 384, 678 *A.*2d 1051.

*N.J.S.A.* 40A:5–16 prohibits any local unit or body, such as Lacey, from paying out any of its monies:

a. unless the person claiming or receiving the same shall first present a detailed bill of items or demand, specifying particularly how the bill or demand is made up, with the certification of the party claiming payment that it is correct. The governing body may, by resolution, require an affidavit in lieu of the said certification, and the clerk or disbursing officer of the local unit may take such affidavit without cost; and

b. unless it carries a certification of some officer or duly designated employee of the local unit having knowledge of the facts that the goods have been received by, or the services rendered to, the local unit.

Additionally, *N.J.S.A.* 40A:5–17 provides that a governing body of a local unit "shall approve or disapprove all claims. . . . Claims shall be approved or disapproved in the manner prescribed by the rules" promulgated either by the bureau or by an ordinance written in accordance with certain statutory specifications set forth in *N.J.S.A.* 40A:5–17.

Thus, until the official act of the governmental agency authorizing the payment pursuant to *N.J.S.A.* 40A:5–16 and 5–17 takes place, the costs are not actually incurred and, therefore, are not eligible for payment as they do not fall within the definition of damages as set forth in *N.J.A.C.* 7:1J–1.4. *N.J.A.C.* 7:1J–2.4(a) specifically provides that the claimant, to be eligible for compensation, must have "actually suffered damages which are the subject of the claim" and that "[a] claim shall be ineligible for compensation from the fund to the extent that the damages which are the subject of the claim are contingent or speculative." The decision to provide an alternate water source, the approval of contracts for

construction of the means needed to supply the water, and the start of construction do not constitute the actual incurring of the cost by the authority. Inasmuch as no costs were "actually incurred" by Lacey until payment was authorized, discovery of Lacey's damages coincided with the date that the governing body authorized payment of the expenditure.

In conclusion, we hold that the arbitrator's denial of Lacey's cost-reimbursement claims because they were untimely filed under the one-year limitations period in *N.J.S.A.* 58:10–23.11k was "incorrect as a matter of law." Lacey's claim, having been filed within one year of the authorization of payments made for which Lacey seeks recovery, is timely.

Therefore, we reverse the decision denying Lacey's claims because of untimely filing. We remand for consideration of the merits of the claims.