738 A.2d 955 (1999)
162 N.J. 30
LACEY MUNICIPAL UTILITIES AUTHORITY, Appellant-Respondent,
v.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, ENVIRONMENTAL CLAIMS ADMINISTRATION, SPILL COMPENSATION FUND, Respondent-Appellant.
Supreme Court of New Jersey.
Argued September 13, 1999.
Decided October 28, 1999.
*956 Mark D. Oshinskie, Deputy Attorney General, for appellant (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Mr. Oshinskie and Eric Broadway, Deputy Attorney General, on the briefs).
Jerry J. Dasti, Forked River, for respondent (Dasti, Murphy & Wellerson, attorneys).
The opinion of the Court was delivered by VERNIERO, J.
This appeal requires us to determine whether the Lacey Municipal Utilities Authority (Lacey or the Authority) may proceed with its reimbursement claims against the fund established by the New Jersey Spill Compensation and Control Act (the Spill Fund) or whether those claims are barred by the one-year statute of limitations found at N.J.S.A. 58:10-23.11k. The administrative law judge who arbitrated the claims concluded that they were time barred and that the New Jersey Department of Environmental Protection (DEP) had not waived a strict application of the statute of limitations. The Appellate Division reversed, concluding that the one-year time bar did not begin to run until Lacey actually expended the funds for which it seeks reimbursement. 312 N.J.Super. 298, 711 A.2d 932 (App.Div. 1998).
We granted the DEP's petition for certification, 157 N.J. 545, 724 A.2d 804 (1998), and now affirm the judgment but for reasons different from those expressed by the Appellate Division. Because of the uncertainty surrounding the application of the statute to this public-entity claimant, we conclude that Lacey should be permitted to proceed with its claims. We express no opinion on the merits of those claims, *957 which must be evaluated in accordance with the normal administrative process. In the future, similar applications by governmental entities will be governed by the DEP's newly-adopted regulation, which should bring necessary certainty to the claims process that was lacking in this case. See N.J.A.C. 7:1J-6.1.

I
The essential facts are undisputed. On November 18, 1986 and January 6, 1987, a residential potable well in Lacey Township, in an area designated as Municipal Utilities Authority Zone 12 (Zone 12), was found to contain benzene, a hazardous substance, in excess of the level established as safe for drinking purposes. Sometime later, additional wells were discovered to be contaminated with benzene and other hazardous substances. On March 3, 1988, Lacey began preliminary engineering work necessary for the Authority to conduct a public hearing on whether it should expand its water system into Zone 12. The work performed included projected cost estimates and the preparation of a water master plan report for potential expansion of the water distribution system.
The Zone-12 project consisted of a contract to construct a water transmission main and a contract for a water distribution system for several zones, including Zone 12. Lacey solicited the first bids for the water transmission contract in late 1989 and awarded the contract on December 20, 1989. Actual construction of the main portion of the Zone-12 water project began two months later in February 1990. Lacey approved the first payment for the construction of the water transmission main on April 4, 1990.
Lacey also solicited bids and awarded a contract for the water distribution system, approving the first payment on September 5, 1990. Finally, on February 28, 1991, Lacey filed its claim in the amount of $746,540 against the Spill Fund, seeking compensation for costs related to the Zone-12 projects.
In July 1990, a residential potable well located in an area designated as Municipal Utilities Authority Zone 10 (Zone 10) was found to contain trichloroethylene, a hazardous substance, at a level unsafe for drinking. Thereafter, additional wells were discovered to be similarly contaminated so Lacey approved the expansion of its waterlines into Zone 10. On January 2, 1991, Lacey solicited bids for that waterextension project, awarding the contract only weeks later on January 23, 1991.
Actual construction of the Zone-10 extension began on May 2, 1991, with Lacey approving the first payment for this project on June 26, 1991. Slightly less than a year later, on June 22, 1992, Lacey filed a claim in the amount of $181,834 against the Spill Fund, seeking reimbursement of the costs of the Zone-10 project.
Acting in its capacity as administrator of the Spill Fund, the DEP denied both claims. The DEP considered the claims barred by N.J.S.A. 58:10-23.11k, which provides that "[c]laims shall be filed with the administrator not later than one year after the date of discovery of damage." Thereafter, Lacey requested arbitration pursuant to N.J.S.A. 58:10-23.11n, and the matter was transferred to the Office of Administrative Law.
Serving as arbitrator, an administrative law judge conducted a two-day hearing and issued a final decision barring Lacey's claims. The arbitrator concluded that the claims were untimely because they were filed in excess of one year from the date Lacey entered into the construction contracts. The arbitrator further found that nothing in the record of prior dealings between the parties could have led Lacey reasonably to conclude that the DEP would waive or otherwise relax its strict adherence to the one-year limitations period.
The Appellate Division disagreed. 312 N.J.Super. 298, 711 A.2d 932 (App.Div. 1998). Citing N.J.A.C. 7:1J-1.4, which provides that damages shall include "all *958 cleanup and removal costs and all direct and indirect damages actually incurred," and N.J.S.A. 40A:5-16 and 40A:5-17, which prohibit local entities from paying claims not properly approved by a governing body, the Appellate Division reasoned that Lacey did not actually incur damages until it authorized payment for the two construction projects. Id. at 307-12, 711 A.2d 932.

II
The Spill Compensation and Control Act (the Act) provides for the establishment of a revolving fund known as the Spill Fund. N.J.S.A. 58:10-23.11 to -23.24. The fund's central purpose is to finance the prevention and cleanup of hazardous-waste discharges and to compensate persons damaged by such pollution. N.J.S.A. 58:10-23.11a; see also Buonviaggio v. Hillsborough Township Comm., 122 N.J. 5, 7-10, 583 A.2d 739 (1991). When the Act was first enacted in 1977, the Department of Treasury (Treasury) administered the fund. In 1985, the Legislature amended the Act, transferring that function to the DEP. N.J.S.A. 58:10-23.11i (as amended by L. 1985, c. 115, § 3).
As noted, the Act requires that claims against the Spill Fund shall be filed with the DEP "not later than one year after the date of discovery of damage." N.J.S.A. 58:10-23.11k. The statute does not define the phrase "discovery of damage." At the time Lacey filed its claims, there were no regulations explicating how that phrase would apply to a public-entity claimant whose claims resulted from contamination to a residential water supply. When Lacey filed its Zone-12 claim, the only regulations in place were those of general application that carried over from the time Treasury had administered the fund. See 9 N.J.R. 241 (May 5, 1977).
The DEP did not propose comprehensive regulations until April 6, 1992, more than a year after Lacey filed its Zone-12 claim and well after the Authority began construction of the Zone-10 project. 24 N.J.R. 1255 (Apr. 6, 1992). Significantly, at the time the DEP proposed those regulations, it stated in the New Jersey Register:
The rules adopted by the administrator in the Department of the Treasury in 1977 were originally intended to be interim rules. These rules provided only the most general guidance to the administrator and to claimants. The DEP [ ] believes that detailed rules are necessary to provide specific guidance to claimants at all stages of the claims process, and to ensure that the Department's action on claims will be consistent.

[Ibid. (emphasis added).]
We infer from this statement that, at least as of April 1992, the DEP itself thought the process lacked the degree of certainty necessary for claims to be submitted and evaluated on a consistent basis.
The 1992 regulations outlined the claims procedure in some detail, and thus represented an improvement over the prior rules. They were still silent, however, with respect to the application of the phrase "discovery of damage" to a publicentity claimant whose claims resulted from contamination to potable wells other than its own. As discussed infra, the DEP did not adopt a regulation applicable to publicentity claimants in those circumstances until 1999. See N.J.A.C. 7:1J-6.1.
We reviewed the meaning of the phrase "discovery of damage" in our prior case involving the Spill Fund, Buonviaggio, supra, 122 N.J. 5, 583 A.2d 739. There, residents of Hillsborough Township were notified that their groundwater might be contaminated. Id. at 11-12, 583 A.2d 739. Eventually, plaintiffs were notified that Hillsborough Township had enacted an ordinance requiring all residents to connect to the public water supply. Id. at 12-13, 583 A.2d 739. As owners of a farm that used large amounts of water, plaintiffs were reluctant to comply. Id. at 13, 583 A.2d 739. In response, the Township recommended *959 that plaintiffs seal their private well and connect to the public water system for their residence, but that they use a pumping system, drawing water from the Raritan River, for their farm. Ibid. That alternative required additional funds and permits. Ibid. The DEP refused the Township's request to fund the pumping system project, and plaintiffs filed a claim for damage. Id. at 14, 583 A.2d 739. The administrator of the Spill Fund denied plaintiffs' claim as untimely. Id. at 15, 583 A.2d 739.
We observed that "early negotiations concerning an environmental responsibility do not necessarily indicate the `discovery of damages' that triggers the Spill Fund's statute of limitations." Id. at 16, 583 A.2d 739. Instead, "the damages had occurred when `negotiations ultimately broke down' and the property owner was `officially assured' that" negotiations had ceased and that damages were fixed. Ibid. (quoting In re NL Indus., 240 N.J.Super. 162, 170, 572 A.2d 1177 (App.Div.1990)). Thus, we determined that "the damages claimed, the economic losses occasioned by pollution from a distant source, did not become final or fixed until the DEP established that it would not correct the environmental damage with the available resources and that a claim against the Spill Fund would have to be made." Id. at 19, 583 A.2d 739.
Buonviaggio is not dispositive here because the facts and circumstances surrounding the citizen claims in that case are different from those surrounding Lacey's public-entity claims. Here, for example, there were no extended negotiations between the government and claimant that could have tolled the statute or lulled claimant into believing its claims would be allowed. However, the principles relied on in Buonviaggio are helpful in resolving the present dispute.

III
In Buonviaggio, we emphasized the point in time at which "the DEP established that it would not correct the environmental damage with the available resources and that a claim against the Spill Fund would have to be made." Ibid. That was the point at which the citizen claimants knew with certainty that they would have to make a claim against the fund. In respect of a public entity, then, we ask: When does the public entity know or have reason to know that a claim against the Spill Fund will have to be made?
The DEP has suggested a reasonable answer to this question by amending N.J.A.C. 7:1J-6.1. In its earlier form, the regulation did no more than repeat the language of the statute requiring that claims be filed within one year of discovery of damage. As stated previously, the regulation was silent with regard to publicentity claimants. See 30 N.J.R. 4157 (Dec. 7, 1998); 31 N.J.R. 763 (Mar. 15, 1999). The regulation now provides:
With regard to claims filed by government entities, for damages resulting from contamination to private potable wells other than the claimant's own well(s), the date of discovery of damages is when the government entity agrees by vote, ordinance, resolution or other binding commitment, whichever occurs first, to restore, repair or replace the contaminated potable wells in question.

[N.J.A.C. 7:1J-6.1.]
This language was proposed and adopted in direct response to the Appellate Division decision in this case. See 30 N.J.R. 4157 (Dec. 7, 1998).
We believe the new regulation provides a sound basis for determining when a governmental entity knows that a claim against the Spill Fund will have to be made. In the instances in which a public entity provides an alternative water source for property owners whose own water sources are contaminated, the entity must determine if and when it will incur damage by extending its waterline or taking other appropriate action. Because the public entity does not own the contaminated land, it *960 is only when it decides to extend its waterline that it suffers damage, not when the contamination is detected and not even when non-binding preliminary engineering studies are undertaken.
It also logically follows, as reflected in the regulation, that in matters involving claims by public entities, an entity "decides" to act when it votes on an action or passes an ordinance, resolution or otherwise makes a binding commitment. As such, when a governmental entity authorizes adoption of an ordinance, resolution or other binding commitment to extend its waterlines due to contamination, it has "discovered" that it will sustain some "damage." At that time, the entity knows or should know that a claim against the Spill Fund will have to be made. The oneyear limitations period would, therefore, commence at that point.
The newly-promulgated regulation also helps to effectuate the policies underlying the creation of the Spill Fund. The Legislature's decision to provide "swift and adequate compensation to ... persons damaged by [the] ... discharge of hazardous substances" is meant to ensure the "prompt containment and removal of such pollution and substances." N.J.S.A. 58:10-23.11a. Once a governmental entity has committed itself to incurring damages compensable by the Spill Fund, the requirement of making timely claims helps ensure predictability in the administration of the fund. In turn, that helps facilitate the DEP's role as conservator of the fund, and assists the administrator in ensuring that adequate capital is available for the immediate containment of an environmental disaster. See Buonviaggio v. Hillsborough Township Comm., supra, 122 N.J. at 15, 583 A.2d 739.
We disagree with the approach of the Appellate Division equating discovery of damages with Lacey's payment of costs. That approach would permit a local governmental entity to stretch the limitations provision to any point in time at which it authorized the expenditure of funds, allowing it excessive control over the claims process.

IV
Although we disagree with the Appellate Division's rationale, we affirm its judgment and hold that Lacey should be permitted to proceed. The absence of clear regulations at the time of Lacey's claims created undue uncertainty and it would be unfair under the circumstances to disallow the Authority's claims. That uncertainty is highlighted by the fact that of the several tribunals and agencies that had the occasion to review this matter, each arrived at a different conclusion with respect to the commencement of the statute of limitations. The administrative law judge held that the discovery of damage occurred when Lacey entered into its construction contracts, which was more than one year before it filed its claims. The DEP, however, applied a later date, the date that Lacey began actual construction within the zones. The Appellate Division applied yet a third date, namely, the date on which Lacey specifically authorized payment of costs.
As sometimes happens with complex statutory and regulatory schemes, in this case "[r]easonable people, indeed, reasonable judges, disagreed...." Lowe v. Zarghami, 158 N.J. 606, 630, 731 A.2d 14 (1999). Simply put, we consider it unfair for Lacey to be placed in a position of having to guess the trigger date for the statute of limitations, especially when an administrative law judge, an executive agency, and an appellate court each have arrived at a different date. "We do not think obligations or entitlements... should become the matter of either cunning or guesswork." W.V. Pangborne & Co. v. New Jersey Dep't of Transp., 116 N.J. 543, 560, 562 A.2d 222 (1989).
We agree with the conclusion of the administrative law judge that the DEP did not waive the protections of the statute, but note again the uncertainty over the *961 relevant commencement date in the context of Lacey's filings. Although it may be possible for us today to determine the trigger date of the statute in light of the new regulation, we must judge the timeliness of Lacey's claims based on the law and circumstances existing when the claims were first filed. The very concerns that dictate caution when contemplating retroactive application of regulations assure us that Lacey ought not be disadvantaged by the application of twenty-twenty hindsight. See, e.g., Twiss v. State, Dep't of Treasury, 124 N.J. 461, 591 A.2d 913 (1991); Citizens for Equity v. New Jersey Dep't of Envtl. Protection, 252 N.J.Super. 62, 76, 599 A.2d 516 (App.Div.1990) ("[R]etroactive application of an administrative rule is not favored."), aff'd, 126 N.J. 391, 599 A.2d 507 (1991).
We have recognized in environmental matters, and in other cases as well, that administrative agencies should be guided by principles of basic fairness in determining how best to effectuate public policy. See, e.g., State, Dep't of Envtl. Protection v. Stavola, 103 N.J. 425, 511 A.2d 622 (1986); In re Kallen, 92 N.J. 14, 26-27, 455 A.2d 460 (1983). As this Court noted, "[t]he determination of whether agencies have observed principles of basic fairness... requires `an examination of the facts in each case, giving weight to the effect of the decision on the agency's public policy.'" Stavola, supra, 103 N.J. at 436 n. 2, 511 A.2d 622 (citation omitted). In recognition of those principles, we conclude that, "[i]n the context of this case, allowing [Lacey] to present a claim does no more than recognize the simple justice in the situation." Buonviaggio v. Hillsborough Township Comm., supra, 122 N.J. at 16-17, 583 A.2d 739.
Further, we note the compatibility of interests among the parties. Lacey has an interest in purifying its water supply, the lifeblood of any community. The DEP has an interest in maintaining quality drinking water in all municipalities, including Lacey. The Legislature, a silent stakeholder in any matter requiring interpretation of one of its enactments, expressed an interest in ensuring a reliable mechanism to fund environmental cleanups when it established the Spill Fund itself. All of those interests are advanced by allowing Lacey to file its claims. Hence, "we conclude that allowing th[ese] claim[s] comports with both the legislative goals and public-policy considerations." Id. at 17, 583 A.2d 739.
We also consider the facts and circumstances of this matter to be unique. In other words, we do not suggest that the Spill Fund administrator must accept a tardy claim merely because a claimant alleges uncertainty. The fact that the DEP has now promulgated a clear and certain rule should guard against future disputes. We suggest that the DEP consider promulgating regulations governing claimants other than governmental entities so that the uncertainty that Lacey faced does not confront other claimants. We remain mindful, and thus reiterate, that although it has an overriding interest in ensuring the safety of water in Lacey and elsewhere, the DEP must also preserve the integrity and resources of the Spill Fund by adhering to the limitations provision contained in the statute.

V
As modified, the judgment of the Appellate Division is affirmed.
For modification and affirmance Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO 7.
OpposedNone.