768 A.2d 782

STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF–APPELLANT/CROSS–RESPONDENT, v. JOSEPH J. CALDEIRA, SR., INDIVIDUALLY, AND AS PRIOR OWNER, OPERATOR, MANAGER, DIRECTOR, OFFICER AND/OR SHAREHOLDER OF FORCEES, INC., CALDEIRA BROTHERS, INC., AND SOUTHERN OCEAN LANDFILL, INC., DEFENDANT–RESPONDENT/CROSS–APPELLANT, AND JOSEPH J. CALDEIRA, JR., INDIVIDUALLY, AND AS OWNER, OPERATOR, MANAGER, DIRECTOR, OFFICER AND/OR SHAREHOLDER OF FORCEES, INC. AND CALDEIRA BROTHERS, INC., CALDEIRA BROTHERS, INC., U.S.A. WASTE RECYCLING OF NEW JERSEY, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND CORPORATE SUCCESSOR TO CALDEIRA BROTHERS, INC., DEFENDANTS–RESPONDENTS, AND SOUTHERN OCEAN LANDFILL, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 18, 2000—Decided March 16, 2001.

204

Before Judges KEEFE, EICHEN and STEINBERG.

*Lisa T. Wahler,* Deputy Attorney General, argued the cause for appellant/cross-respondent New Jersey Department of Environmental Protection *(John J. Farmer, Jr.,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. Wahler,* on the brief).

*Kevin Starkey* argued the cause for respondent/cross-appellant Joseph J. Caldeira, Sr. *(Starkey, Kelly, Blaney & White,* attorneys; *Dina R. Khajezadeh,* on the brief).

*Frank W. Gasiorowski* argued the cause for respondent Joseph J. Caldeira, Jr. *(Gasiorowski & DeMassi,* attorneys; *Mr. Gasiorowski,* on the brief).

*James O'Toole* argued the cause for respondent U.S.A. Waste Recycling of New Jersey, Inc. *(Saul, Ewing, Remick & Saul,* attorneys; *Mr. O'Toole,* of counsel and on the brief; *James A. Keller,* also on the brief).

No brief was submitted on behalf of Southern Ocean Landfill, Inc.

The opinion of the court was delivered by

EICHEN, J.A.D.

On April 23, 1999, the New Jersey Department of Environmental Protection (DEP) filed a complaint against the owners and operators of various solid waste public utility companies, the companies, and their related entities, under the Uniform Fraudulent Transfer Act, *N.J.S.A.* 25:2–20 to –34 (the Fraudulent Transfer Act or Act). Named as defendants are Joseph J. Caldeira, Jr. (Caldeira, Jr.), individually and as prior owner, operator, manager, director, officer and/or shareholder of Forcees, Inc. and Caldeira Brothers, Inc., Caldeira Brothers, Inc. (Caldeira Brothers), Joseph J. Caldeira, Sr. (Caldeira, Sr.), individually and as prior owner, operator, manager, director, officer and/or shareholder of Forcees, Inc., Caldeira Brothers and Southern Ocean Landfill, Inc., South-

ern Ocean Landfill, Inc. (SOLF),[1] and U.S.A. Waste Recycling of New Jersey, Inc. (U.S.A. Waste). The complaint seeks to set aside, as fraudulent, certain transfers and to use the transferred assets, and any proceeds thereof, to fund the closure of a landfill operated by SOLF located in Ocean County. The transferred assets are Caldeira, Sr.'s stock in Caldeira Brothers and Forcees, Inc. and a $600,000 debt owed to SOLF by Caldeira Brothers for tipping fees. Count one of the complaint alleges that Caldeira, Sr. made the transfers to Caldeira, Jr. with the intent to defraud the DEP, pursuant to *N.J.S.A.* 25:2–25a (actual fraud). Count two alleges that Caldeira, Sr. made the transfers "without receiving a reasonably equivalent value in exchange," pursuant to *N.J.S.A.* 25:2–25b (constructive fraud). The complaint contains no allegations against U.S.A. Waste.

The appeal requires us to determine which limitation period applies to the filing of the DEP's complaint brought under *N.J.S.A.* 25:2–25: the four-year/one-year time limitations in *N.J.S.A.* 25:2–31, or the ten-year limitations period in *N.J.S.A.* 2A:14–1.2, the general statute of limitations for bringing actions against the State or its political subdivisions. If the ten-year period applies, the DEP's action is not time-barred. If the four-year limitations period of *N.J.S.A.* 25:2–31 applies, then the action is time-barred, unless the DEP filed its complaint within four years after the date the challenged assets were transferred or one year from the date the transfers could reasonably have been discovered by the DEP.

The appeal arises from the grant of a motion to dismiss the complaint by defendants under *R.* 4:6–2(e). The judge treated the motion as one for summary judgment without objection by the parties. The following undisputed facts are derived from the documents submitted by the parties.

From 1965 until 1989, Caldeira, Sr. owned and operated Caldeira Brothers, a solid waste collection public utility company

---

[1] SOLF does not seem to have appeared in the action.

which was then subject to the control of the Board of Public Utilities (BPU). Caldeira, Sr. also owned SOLF and was the director and/or officer of that company. SOLF owned and operated a sanitary landfill in Ocean County. In addition, Caldeira, Sr. owned 100% of the shares in Forcees, Inc. (Forcees), an equipment leasing company. Forcees was the exclusive provider of the equipment used by Caldeira Brothers in its hauling operations.[2]

In 1988, the landfill operated by SOLF had reached its permitted capacity and ceased accepting sanitary waste. Sometime thereafter, SOLF presented a closure plan to the DEP pursuant to the Landfill Facility Closure and Contingency Fund Act (the Closure Act), N.J.S.A. 13:1E–100 to –116.[3] The Closure Act imposes liability on "owners and operators" of sanitary landfills for costs related to the operation and closure of such facilities. There are two primary types of landfill escrow accounts required to be maintained by a landfill owner: a closure/post-closure account established under the Closure Act (DEP closure account), and an environmental improvement escrow account (BPU closure account), established by the former BPU in its rate-making capacity pursuant to N.J.S.A. 48:2–21. The cost of funding the closure and post-closure care of SOLF's landfill was projected in SOLF's closure plan to be $23 million.

In 1989, Caldeira, Sr. transferred 99% of his stock in Caldeira Brothers to his son, Caldeira, Jr. "[i]n consideration of the valuable services provided to [Caldeira Brothers] by [Caldeira, Jr.]." On December 22, 1989, the BPU issued an order approving the transfer. At the same time, Caldeira, Sr. transferred all of his

---

[2] Apparently, Forcees is not a solid waste utility company subject to regulation by the BPU or the DEP.

[3] The Solid Waste Management Act, N.J.S.A. 13:1E–1 to –207, controls the closure of sanitary landfills and is supplemented by the Closure Act. *Port of Monmouth Dev. Corp. v. Middletown Twp.*, 229 N.J.Super. 445, 449, 551 A.2d 1030 (App.Div.1988).

stock in Forcees to Caldeira, Jr. allegedly without any consideration being paid by Caldeira, Jr.

In 1991, Caldeira, Sr., on behalf of SOLF, and Caldeira. Jr., on behalf of Caldeira Brothers, entered into an agreement in which SOLF agreed to forgive a $600,000 indebtedness owed to it by Caldeira Brothers for tipping fees. In the same year, and, effective August 19, 1991, pursuant to Reorganization Plan No. 002–1991, *N.J.S.A.* 13:1D–1, the responsibilities for solid waste economic regulation, including responsibility for the oversight and administration of the escrow funds in the closure accounts for all landfills, were transferred from the BPU to the DEP.

On April 27, 1992, Caldeira, Sr. submitted a sworn "Personal History Disclosure Statement" to the DEP, Division of Solid Waste Management (the Division), A–901 unit, the Division's licensing section. The statement reveals that Caldeira, Sr. was no longer the owner of Caldeira Brothers.

Other documents in the possession of the DEP reflect that on March 19, 1993, Caldeira, Jr. transferred his shares of stock in Forcees to Envirofil, Inc. in consideration of $822,000. A few months later, on August 5, 1993, he transferred the assets of Caldeira Brothers to Mid–Jersey Disposal Company, Inc. for $600,000. On February 28, 1994, Envirofil, Inc. acquired the stock of Mid–Jersey Disposal Company, Inc. Defendant U.S.A. Waste acquired the stock in Envirofil, Inc. on May 27, 1994.

On November 24, 1997, the DEP commenced an enforcement proceeding against SOLF and Caldeira, Sr., individually, and as owner and operator of SOLF. The same judge as was the motion judge in this fraudulent transfer action presided over the enforcement proceeding (the closure action). The DEP's complaint in the closure action alleged that the spillage of leachate from the landfill was imminent, that the defendants improperly operated the landfill and failed to implement a closure and post-closure care plan for the landfill in violation of the Closure Act.

The DEP filed a certification in the closure action prepared by Joseph Lomerson, the supervisor of the "Escrow/Administration unit in the Bureau of Solid Waste Regulation, Division of Solid and Hazardous Waste, Department of Environmental Protection." Mr. Lomerson certified, among other things, that the BPU closure account was depleted, and that the DEP closure account, which contained only $1.69 million, could not be used until there were sufficient funds in the account to properly close and maintain the landfill. Mr. Lomerson further certified that the cost and caring for the landfill was estimated to be approximately $14 million.

Thereafter, on December 8, 1997 and January 6, 1998, the parties entered into consent enforcement orders which required Caldeira, Sr. and SOLF to control and transport the leachate generated at the landfill that was threatening to spill over into the surrounding environment.[4] On April 30, 1998, during discovery in the closure action, the DEP's attorney claims, the DEP discovered, for the first time, that Caldeira, Sr. had previously transferred his interest in both Caldeira Brothers and Forcees and that SOLF forgave Caldeira Brothers for $600,000 in tipping fees.

Approximately one year later, on April 23, 1999, the DEP commenced this fraudulent transfer action in the Law Division. As previously noted, in count one of its complaint, the DEP alleges that Caldeira, Sr. transferred his shares of Caldeira Brothers stock and Forcees stock to Caldeira, Jr., and that he forgave the Caldeira Brothers' $600,000 debt to SOLF, with the intent to hinder, delay or defraud the DEP by divesting himself of the assets needed to satisfy his obligations under the Closure Act, contrary to *N.J.S.A.* 25:2-25a. In count two of the complaint, the DEP alleges that the transfers were made by Caldeira, Sr. without receiving "reasonably equivalent value" for the property transferred, contrary to *N.J.S.A.* 25:2-25b. The complaint seeks avoidance of the transfers, an accounting, and delivery of all

---

[4] Caldeira, Sr. and SOLF later defaulted on their obligations under these orders.

proceeds of the transfers and transactions to the DEP to be held in escrow for the closure of the landfill, as well as an injunction against further encumbering of the assets.

The complaint also names U.S.A. Waste as a subsequent transferee, seeking to compel an accounting by that defendant "for any and all property received" and "for all proceeds arising from [the] transactions" described in the complaint. The complaint also seeks to escrow the proceeds in a DEP account. The complaint does not allege any culpable action by U.S.A. Waste.[5]

Before filing answers to the complaint, defendants Caldeira, Sr., Caldeira, Jr., Caldeira Brothers, and U.S.A. Waste moved in the Law Division for an order pursuant to *R.* 4:6–2(e) dismissing the DEP's complaint on the ground that the action was barred by the four-year statute of limitations set forth in *N.J.S.A.* 25:2–31. In addition, U.S.A. Waste sought a dismissal of the complaint on the ground that the complaint failed to state a claim against it upon which relief could be granted.

As previously noted, the record reflects that the parties did not contest the previously recited "facts" and essentially acquiesced in the judge's treating the *R.* 4:6–2(e) motion as though it were a summary judgment motion.

On October 22, 1999, the motion judge dismissed the complaint as time-barred under *N.J.S.A.* 25:2–31 against U.S.A. Waste and Caldeira, Jr. with respect to the transfer of ownership in Caldeira Brothers and the $600,000 debt forgiveness, but denied Caldeira, Jr.'s motion to dismiss as it related to the transfer of the Forcees stock.[6] The judge also ruled that the complaint failed to set forth

---

[5] At oral argument, however, counsel for the DEP indicated it was claiming that U.S.A. Waste did not pay reasonable consideration for its acquisition of the property formerly owned by Caldeira, Sr. and Caldeira, Jr. *See N.J.S.A.* 25:2–30.

[6] The judge also denied Caldeira, Jr.'s subsequent motion for reconsideration. A second motion for reconsideration is currently pending in the Law Division in which Caldeira, Jr. seeks to demonstrate through the production of certain equipment leases and other documents in the possession of the DEP dated in

with specificity any cause of action against U.S.A. Waste and dismissed the complaint against U.S.A. Waste on that basis as well. The judge, however, concluded the complaint was not timebarred against Caldeira, Sr., determining that the ten-year statute of limitations in *N.J.S.A.* 2A:14–1.2 rather than the four-year limitations provision in the Fraudulent Transfer Act applied to that defendant. We granted the DEP's motion for leave to appeal and Caldeira, Sr. filed a cross-appeal.

On appeal, the DEP makes the following arguments:

*POINT I*

IT WAS ERROR FOR THE LOWER COURT TO DISMISS THE DEPART-MENT'S COMPLAINT AS AGAINST U.S.A. WASTE AS THE COMPLAINT MORE THAN SUFFICIENTLY STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

*POINT II*

IT WAS ERROR FOR THE LOWER COURT TO APPLY THE FRAUDULENT CONVEYANCE ACT STATUTE OF LIMITATIONS TO THIS CLAIM AS THE TEN–YEAR STATUTE OF LIMITATIONS AS SET FORTH IN *N.J.S.A.* 2A:14–1.2 GOVERNS.

*POINT III*

EVEN IF THE FRAUDULENT CONVEYANCE ACT'S FOUR–YEAR/ONE–YEAR STATUTE OF LIMITATIONS APPLIES TO THIS MATTER, IT WAS ERROR FOR THE LOWER COURT TO DISMISS THE STATE'S FRAUDU-LENT CONVEYANCE ACTIONS RELATED TO CALDEIRA BROTHERS BASED ON THE PRINCIPAL [sic] THAT THE DEPARTMENT OF ENVI-RONMENTAL PROTECTION WOULD HAVE BEEN ON NOTICE OF THE TRANSACTIONS BECAUSE THE BOARD OF PUBLIC UTILITIES AP-PROVED THEM.

On the cross-appeal, Caldeira, Sr. argues:

*POINT I*

THE FOUR YEAR STATUTE OF LIMITATIONS PROVIDED BY *N.J.S.A.* 25:2–31 IS APPLICABLE TO ACTIONS INSTITUTED BY THE STATE OR ANY OF ITS POLITICAL SUBDIVISIONS.

*POINT II*

THE TRIAL COURT WAS CORRECT IN DISMISSING THE FRAUDULENT CONVEYANCE ACTIONS RELATED TO CALDEIRA BROTHERS ON THE

---

1992 that the DEP was aware of the transfer of the stock in Forcees as of that time. Therefore, it appears the DEP's claims based on the transfer of the Forcees stock are still pending in the Law Division.

GROUNDS THAT THE DEPARTMENT OF ENVIRONMENTAL PROTEC-
TION WAS ON NOTICE OF THE TRANSACTIONS. HOWEVER, THE TRI-
AL COURT ERRED IN FAILING TO DISMISS THE FRAUDULENT CON-
VEYANCE ACTIONS RELATED TO JOSEPH J. CALDEIRA, SR.

## I.

We first address the issue of which statute of limitations applies to the DEP's Fraudulent Transfer action, *N.J.S.A.* 25:2–31 or *N.J.S.A.* 2A:14–1.2.

*N.J.S.A.* 25:2–31 provides, in pertinent part, that "[a] cause of action with respect to a fraudulent transfer or obligation . . . is extinguished unless action is brought:"

a. Under subsection a of [*N.J.S.A.*] 25:2–25, within four years after the transfer . . . or obligation . ., or if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

b. Under subsection b. of [*N.J.S.A.*] 25:2–25 . . within four years after the transfer was made or the obligation was incurred. . . .

*N.J.S.A.* 25:2–25 of the Fraudulent Transfer Act sets forth two types of fraudulent transfers from which a defrauded creditor may obtain relief: actual fraud, which is defined in subsection a, and constructive fraud, which is defined in subsection b.[7]

A "creditor" is defined in the Fraudulent Transfer Act as "a person who has a claim." *N.J.S.A.* 25:2–21. "Debtor" means "a person who is liable on a claim." *N.J.S.A.* 25:2–21. "Person" is defined broadly and includes "government or governmental subdivision or agency. . . ." *N.J.S.A.* 25:2–22. "Claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

---

[7] *N.J.S.A.* 25:2–25 provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation. . . .

disputed, undisputed, legal, equitable, secured or unsecured." [8] *N.J.S.A.* 25:2–21.

The general statute of limitations statute, *N.J.S.A.* 2A:14–1.2 provides in part:

a. Except where a limitations provision expressly and specifically applies to actions commenced by the State or where a longer limitations period would otherwise apply, and subject to any statutory provisions or common law rules extending limitations periods, any civil action commenced by the State shall be commenced within ten years next after the cause of action shall have accrued.

\* \* \* \*

c. As used in this act, the term "State" means the State, its political subdivisions, any office, department, division, bureau, board, commission or agency of the State or one of its political subdivisions, and any public authority or public agency....

Prior to the passage of the general statute of limitations, the Supreme Court abrogated the doctrine of *nullum tempus occurrit regi* ("no time runs against the king"). *N.J. Educ. Facilities v. Gruzen,* 125 *N.J.* 66, 75, 592 *A.2d* 559 (1991). In response to the abrogation, the Legislature passed the ten-year limitations provision applicable to the State and its subdivisions. *N.J.S.A.* 2A:14–1.2.

The DEP argues that the general ten-year statute of limitations set forth in *N.J.S.A.* 2A:14–1.2 governs the time for filing its fraudulent transfer complaint. It maintains that the four-year limitations provision in the Fraudulent Transfer Act does not control its action brought under the Closure Act, and therefore it should not control its action to set aside the alleged fraudulent transfers of assets needed to properly close and care for the landfill.

Relying on our decisions in *DEP v. Larchmont Farms,* 266 *N.J.Super.* 16, 628 *A.2d* 761 (App.Div.1993), *State v. Cruz Constr.*

---

[8] Although the term "claimant" is not defined in the Fraudulent Transfer Act, we assume it means a "person" who has a claim. Therefore, we interpret the term "claimant," as utilized in the Fraudulent Transfer Act, to be synonymous with the term "creditor."

*Co., Inc.,* 279 *N.J.Super.* 241, 652 *A.*2d 741 (App.Div.1995), and *Lacey Mun. Util. Auth. v. DEP,* 312 *N.J.Super.* 298, 711 *A.*2d 932 (App.Div.1998), *aff'd as modified,* 162 *N.J.* 30, 738 *A.*2d 955 (1999), the DEP argues that the statute of limitations provision in the Fraudulent Transfer Act does not apply to the State because it cannot be shown that a shorter time limitation "expressly and specifically" applied to the State before the abrogation of the *nullum tempus* doctrine. We have reviewed these decisions and conclude none supports the DEP's argument.

In *Larchmont,* we held that the ten-year limitations provision in *N.J.S.A.* 2A:14–1.2 applied to the DEP's claim brought under the Pesticide Act, and not the two-year statute of limitations under *N.J.S.A.* 2A:14–10 applicable to forfeiture actions brought under a penal statute because the Pesticide Act did not envision forfeiture as a remedy. 266 *N.J.Super.* at 33–34, 628 *A.*2d 761. Noting that there was no express and clear language in *N.J.S.A.* 2A:14–10 applying the forfeiture statute to the State's action under the Pesticide Act, we concluded that the general ten-year limitations provision should apply. *Ibid.; see also Cruz, supra,* 279 *N.J.Super.* at 248, 652 *A.*2d 741.

In *Cruz,* we reached a similar conclusion. There we held that because it was not "expressly and specifically" clear that *N.J.S.A.* 2A:14–1.1, a statute of repose governing suits for injury from unsafe conditions of real property, applied to the State, the State's action was controlled by the ten-year statute of limitations of *N.J.S.A.* 2A:14–1.2. 279 *N.J.Super.* at 248–49, 652 *A.*2d 741.

In contrast, the Fraudulent Transfer Act's limitations provision, *N.J.S.A.* 25:2–31, "expressly and specifically" provides a four-year limitations provision applicable to all fraudulent transfer claims, and a one-year tolling provision for actions brought under *N.J.S.A.* 25:2–25a by a creditor seeking to void a transfer based on actual fraud. Here, the DEP is the "creditor" because it is "a person [with] a claim," *N.J.S.A.* 25:2–21 (defining creditor), and a "person" includes the "government or governmental subdivision or agency...." *N.J.S.A.* 25:2–22.

Moreover, *Lacey* is not to the contrary. 312 *N.J.Super.* at 307, 711 *A.*2d 932. In *Lacey*, this court applied the one-year limitations period found in the Spill Compensation and Control Act, *N.J.S.A.* 58:10–23.11 to –23.24, in lieu of the ten-year general statute of limitations to the municipality's suit against the DEP for reimbursement from the Spill Compensation Fund. *Ibid.* We concluded there that resolution of the limitations issue was dictated by the Supreme Court's holding in *New Jersey Transit Corp. v. Borough of Somerville*, 139 *N.J.* 582, 661 *A.*2d 778 (1995).

In *New Jersey Transit Corp.*, New Jersey Transit sought to contest the local real property tax assessments levied against its real property by the Borough of Somerville after the expiration of the April 1 deadline for filing tax appeals. 139 *N.J.* at 584, 661 *A.*2d 778. The Court held that the ten-year limitations period granted in *N.J.S.A.* 2A:14–1.2 must yield to the specific period granted in *N.J.S.A.* 54:3–21. *Id.* at 591, 661 *A.*2d 778. The Court stated: "[T]he Legislature, in enacting *N.J.S.A.* 2A:14–1.2, was concerned only with establishing a uniform ten-year statute of limitations for actions commenced by governmental entities where no such limitation had previously existed under the doctrine of *nullum tempus....*" *Id.* at 587, 661 *A.*2d 778. The Court determined that the "Legislature could not have intended *N.J.S.A.* 2A:14–1.2 to give governmental entities a longer statute of limitations then they previously had enjoyed." *Id.* at 588, 661 *A.*2d 778. Thus, in *Lacey*, we applied the one-year limitation because it "expressly and specifically" applied to governmental claims prior to the abrogation of *nullum tempus.*

As in *Lacey*, the Fraudulent Transfer Act limitations provision was enacted before the abrogation of the doctrine of *nullum tempus.* The Act was enacted in 1988, effective January 1, 1989. The doctrine was abolished in 1991. Hence, contrary to the DEP's assertion, actions brought by the State and its governmental units were, in fact, controlled by the limitations period provided in the Fraudulent Transfer Act prior to the abrogation of *nullum tempus.* The fact that the shorter limitations period has never

been applied to a DEP Closure Act proceeding either before or after the abrogation of the doctrine is irrelevant because the action brought by the DEP against defendants here is under the Fraudulent Transfer Act, not the Closure Act. The State's closure action against Caldeira, Sr. and SOLF is a separate and distinct proceeding from this action brought against Caldeira, Sr., Caldeira, Jr., and the subsequent transferee, U.S.A. Waste.

We also find unpersuasive the DEP's argument that confining the DEP to the shorter limitations periods of the Fraudulent Transfer Act is contrary to the public interest because it will force it to re-examine its priorities in deciding which landfills to close, those involving the possibility of fraudulent conveyances, or those presenting the greatest harm to the environment. Ordinarily, we would not address this contention because the DEP did not raise it during the motion in the Law Division; however, because of the public interest implicated by the assertion, we make this limited response.

We perceive no indication by our Supreme Court that it would apply a different time limitation to the DEP than it would to any other "person" bringing a claim under the Fraudulent Transfer Act. If the limited resources and capabilities of the DEP are such that it cannot oversee both the environmental and fiscal aspects of landfill closures within the time constraints of the Fraudulent Transfer Act, it should petition the Legislature for relief. This court, however, will not write a better statute than the one the Legislature has already written.

Moreover, we do not understand why the DEP cannot protect itself by seeking at the inception of every landfill closure, by consent or otherwise, a judicial decree enjoining the owner of a landfill from making transfers or incurring obligations except in the ordinary course of business, pending complete closure of the landfill. It is axiomatic that such closures mean loss of revenue to the owner, *N.J.S.A.* 13:1E–101, and the strong possibility the owner will be unable to meet its obligations under the statute. Hence, the DEP is on notice to keep a sharp vigil, and to act

expeditiously when a landfill is closed to secure the necessary financial information from the owner/operator concerning its assets, and, if necessary, to obtain a restraining order against transfer of its assets. In this way, it will assure proper landfill closures, which are "essential to the public health, safety and welfare." *Ibid.* Perhaps the DEP already has such protective measures in place, and this case is exceptional. The record, however, is silent on the issue. Nonetheless, we cannot make an exception to the applicable statute of limitations just because, in this case, the DEP delayed too long in protecting the public interest.

In sum, we conclude that the four-year time limitation of *N.J.S.A.* 25:2-31 "expressly and specifically" applies to actions commenced by the DEP under the Fraudulent Transfer Act, and not the general statute of limitations in *N.J.S.A.* 2A:14-1.2. The plain language of the Act and the Supreme Court's reasoning in *New Jersey Transit* lead inexorably to this conclusion. Because the transfers and debt forgiveness by Caldeira, Sr. occurred in 1989 and 1991, more than four years before the complaint was filed on April 23, 1999, count one of the complaint is barred, unless, however, the DEP is entitled to the tolling provisions in *N.J.S.A.* 25:2-31a. We address that question in Section II of this opinion. However, the DEP's claims in count two of its complaint are time-barred against all defendants as to all challenged transfers because they were asserted under *N.J.S.A.* 25:2-25b. The tolling provision contained in *N.J.S.A.* 25:2-31a does not apply to actions brought under *N.J.S.A.* 25:2-25b. Since the claims in count two were not asserted within four years after the transfers, they are time-barred. Lastly, to the extent that the motion judge applied a ten-year limitations period against Caldeira, Sr., he erred. The judge did not explain his reasons for applying a different limitations period to the DEP's claims against Caldeira, Sr., and we can perceive no rational basis for such disparate treatment.

## II.

■ We next address the DEP's alternative argument that its claims under *N.J.S.A.* 25:2–25a are timely because of the one-year tolling provision in *N.J.S.A.* 25:2–31a. It argues that the transfers that form the basis of its claims did not become known to it until discovery was conducted in the closure action on April 30, 1998, and that it filed its fraudulent transfer complaint on April 23, 1999, within one year of the discovery. The DEP contends that charging it with constructive knowledge of information received by the BPU in 1989, or the licensing section (A–901 unit) of the Division of Solid Waste Management in 1992, or thereafter, places an unreasonable burden on the agency.

We do not doubt that the DEP's attorney may not have learned of the transfer of Caldeira Brothers until April 30, 1998; however, other representatives of the DEP certainly had knowledge, or reasonably could have had knowledge, of the transfers before April 30, 1998. Even if we did not charge the DEP with knowledge of the BPU administrative order approving the transfer by Caldeira, Sr. of his stock in Caldeira Brothers to Caldeira, Jr. on December 22, 1989, certainly by 1992, given that the BPU and the DEP had merged in 1991,[9] with the DEP assuming the responsibilities of the BPU, the A–901 unit knew, and the DEP reasonably could have known, of Caldeira, Sr.'s transfer of the Caldeira Brothers stock.

■ On April 27, 1992, Caldeira, Sr. submitted his "Personal History Disclosure Statement"[10] to the Solid Waste Management Division, the division in charge of sanitary landfill closures. The

---

[9] Joseph Lomerson certifies that even before 1991 the BPU and the DEP worked together.

[10] Although not mentioned by the parties on appeal, it appears that the disclosure statement may not have been submitted to the motion judge until Caldeira, Jr.'s motion for reconsideration. We have exercised our original jurisdiction and consider this document as part of our determination inasmuch as the DEP argues its significance, or lack thereof, on appeal. *R.* 2:10–5.

statement clearly states Caldeira, Sr. no longer owned Caldeira Brothers. We reject the DEP's argument that only the "A–901 unit" of the Division of Solid Waste Management should be charged with knowledge of the transfer, and not the persons responsible for overseeing the closure of Caldeira, Sr.'s landfill at the DEP because the disclosure statement was maintained as "a confidential document." *See N.J.A.C.* 7:26–16.14. On April 27, 1992, the DEP had possession of the disclosure statement regardless of which unit or department maintained it. All it needed to do was act with minimal diligence and search its own records; had it done so, the statement would have been discovered, revealing that Caldeira, Sr. no longer owned Caldeira Brothers. To obtain the benefit of the tolling provision of *N.J.S.A.* 25:2–31a, a "creditor," even if it is the DEP, must act with "reasonable diligence." *See SASCO 1997, LLC v. Zudkewich,* 166 *N.J.* 579, 589, 767 *A.*2d 469 (2001). By 1992, Caldeira, Sr.'s landfill had ceased receiving sanitary waste for four years. The administration of both the landfill closing and its funding was being overseen by the Solid Waste Management Division of the DEP. The DEP knew it would cost in excess of $20 million to properly close the landfill. At that point, the DEP should have realized that if the closure accounts proved insufficient to assure a complete and proper closure, it would have to pursue Caldeira, Sr.'s assets. Nonetheless, the DEP apparently made no inquiry concerning the financial status of Caldeira, Sr. or SOLF. In these circumstances, it is reasonable for the DEP to be charged with knowledge of the transfer of Caldeira Brothers as of April 27, 1992 because the DEP reasonably could have discovered the transfer by then. Consequently, it should have filed suit within one year after that date (April 27, 1993) or by December 22, 1993, which is four years after the date the transfer was authorized by the BPU.

We also reject the DEP's contention that the judge erred in granting defendants' motions to dismiss because the motions were brought pursuant to *R.* 4:6–2(e). It maintains that no certifications were filed in support of the motion, and no testimony, live or written, was presented to the motion judge to support the proposi-

tion that the DEP reasonably could have discovered the alleged fraudulent transfer. Numerous documents were produced to the judge by both sides. Counsel for the DEP never objected to the judge's review of those documents and his treatment of the motion as a summary judgment motion. Indeed, the record reflects that the attorneys implicitly agreed that the "facts" upon which the motion judge relied in applying the statute of limitations to the transfer of Caldeira Brothers were undisputed.[11] Lastly, we are satisfied there are no credibility issues requiring a *Lopez*[12]-type hearing and the judge did not err in deciding the one-year tolling issue as a matter of law. *SASCO, supra,* 166 *N.J.* at 589, 767 *A.*2d 469. Even if a *Lopez*-type hearing had been conducted, it is clear the evidence would have compelled the same conclusion, *i.e.,* that the DEP reasonably could have discovered the transfer of Caldeira Brothers stock before the limitations period expired.

We do agree with the DEP, however, that the judge should not have dismissed as untimely the DEP's fraud claim under *N.J.S.A.* 25:2–25a against Caldeira, Sr. stemming from his forgiveness of the $600,000 debt owed to SOLF by Caldeira Brothers. Unlike the situation involving the Caldeira Brothers stock, no competent evidence was presented to support the contention that the DEP knew, or reasonably could have known, of this transaction prior to April 30, 1998. Therefore, the DEP's fraudulent transfer claim against defendants as to this asset, at this point in the proceedings, is not time-barred, and the judge erred in dismissing the complaint with respect to that transaction.

We reject Caldeira, Jr.'s argument that the judge erred in denying his initial motion for reconsideration as to the transfer of

---

[11] To the extent there was any suggestion of a contested fact, as for example on the question whether the BPU or the DEP knew, or reasonably could have known, of the transfer by Caldeira, Sr. of his interest in Forcees, the judge reserved that issue pending further proceedings. As previously noted, that issue remains open.

[12] *Lopez v. Swyer,* 62 *N.J.* 267, 274–76, 300 A.2d 563 (1973).

the Forcees stock for two reasons: first, Caldeira, Jr. did not file a notice of cross-appeal of that issue; and second, even if Caldeira, Jr. had filed a cross-appeal, as previously noted, there is currently pending in the Law Division a second motion for reconsideration concerning the impact of the statute of limitations on the Forcees transfer. For that reason also, we decline to resolve the issue.

In sum, the statute of limitations provision in the Fraudulent Transfer Act, *N.J.S.A.* 25:2–31, bars the DEP's cause of action in count one of the complaint against all defendants with respect to the transfer by Caldeira, Sr. of his stock in Caldeira Brothers because the claims in that count were asserted more than four years after the transfer and more than one year after the DEP knew or reasonably could have discovered the transfer. We do not decide whether the limitations provision bars the fraudulent transfer action as it impacts the transfer of Caldeira, Sr.'s stock in Forcees and the $600,000 debt forgiveness because the record is inadequate for such determination. To the extent we have determined that the DEP's claims are time-barred against Caldeira, Sr. and Caldeira, Jr., they are barred against defendant U.S.A. Waste as well.

### III.

We next address the DEP's argument that the court erred in dismissing its complaint against U.S.A. Waste under *R.* 4:6–2(e). U.S.A. Waste argued in the Law Division, as it does on appeal, that because the DEP's complaint failed to specifically allege either actual or constructive fraud against it under the Fraudulent Transfer Act, the complaint failed to state a claim upon which relief could be granted to the DEP against U.S.A. Waste and had to be dismissed. The DEP conceded that it was not asserting a claim against U.S.A. Waste under *N.J.S.A.* 25:2–25; rather it argued that U.S.A. Waste was named as a party defendant because it is a "subsequent transferee," *N.J.S.A.* 25:2–30, of the assets originally represented by the stock in Forcees and Caldeira Brothers. The DEP explained that U.S.A. Waste, as the ultimate

holder of these assets, is a necessary party to the action because its interest in the assets may be affected by the outcome of the litigation if U.S.A. Waste cannot demonstrate that it paid reasonable value for them.

The motion judge essentially ruled that unless the DEP asserted culpable conduct by U.S.A. Waste under the Fraudulent Transfer Act against U.S.A. Waste directly, U.S.A. Waste was not a proper party to the action.

We disagree and reverse the order dismissing the DEP's complaint against U.S.A. Waste under *R.* 4:6–2(e). Our review of the Act and the decisional law of other jurisdictions interpreting the Act convinces us that the DEP's complaint stated a cause of action upon which relief could be granted even though the DEP did not assert any wrongdoing against U.S.A. Waste in the complaint. In addition, under *R.* 4:28–1, U.S.A. Waste was a necessary party, and perhaps even an indispensable party, to the DEP's action to void the transfers at issue.

We address first the statutory authority for joining a party in a fraudulent transfer action without alleging culpable conduct against it. *N.J.S.A.* 25:2–25 governs the liability of a "debtor" for transfers made by the "debtor" that are deemed to be in fraud of the debtor's "creditors." In this case, the DEP is the "creditor," Caldeira, Sr. is the "debtor" and Caldeira, Jr. and U.S.A. Waste are the "transferees." *N.J.S.A.* 25:2–25 does not govern the DEP's fraud claims against the transferees. That section of the Act only controls the DEP's claims against Caldeira, Sr., the debtor.

*N.J.S.A.* 25:2–29 and *N.J.S.A.* 25:2–30 govern the rights and remedies of such a "creditor" against transferees of the "debtor." *N.J.S.A.* 25:2–29 sets forth the creditor's remedies, and allows the "avoidance" of a fraudulent transfer, as well as other remedies, against all transferees, subject, however, to the limitations set forth in *N.J.S.A.* 25:2–30. *N.J.S.A.* 25:2–30 is entitled "Defenses, liability and protection of transferee." That section

prohibits the avoidance of a fraudulent transfer under *N.J.S.A.* 25:2–25a made by a debtor to a transferee who "took [the transferred asset] in good faith and for a reasonably equivalent value." *N.J.S.A.* 25:2–30a. *N.J.S.A.* 25:2–30b(1) and (2) provide that judgment may be entered only against a transferee who did not take in "good faith" and "for value." Stated another way, *N.J.S.A.* 25:2–30 provides a complete defense to a transferee who takes property transferred by a "debtor" in fraud of its "creditors" in "good faith" and "for value." *See National Westminster Bank v. Anders Eng'g, Inc.,* 289 *N.J.Super.* 602, 609–10, 674 *A.*2d 638 (App.Div.1996). However, the burden is on the transferee to demonstrate this affirmative defense. *See Chorost v. Grand Rapids Factory Show Rooms, Inc.,* 172 *F.*2d 327, 329 (3rd Cir.1949) (explaining that once the fraudulent intent of the transferor is shown, the burden of proof shifts to the transferee to affirmatively prove its good faith); *Resolution Trust Corp. v. Spagnoli,* 811 *F.Supp.* 1005, 1016 (D.N.J.1993) (same principle). The official comments to the Uniform Fraudulent Transfer Act are in accord with this view. *See* Comment to *Uniform Fraudulent Transfer Act (U.L.A.)* § 8; *see also In re Agricultural Research and Technology Group, Inc.,* 916 *F.*2d 528, 535 (9th Cir.1990) (citing *In re Candor Diamond Corp.,* 76 *B.R.* 342, 351 (Bankr.S.D.N.Y.1987); *Prairie Lakes Health Care System, Inc. v. Wookey,* 583 *N.W.*2d 405, 414 (S.D.1998)) (analyzing the Uniform Fraudulent Transfer Act in light of the Bankruptcy Code to determine that the burden is on the transferee to establish a good faith defense).

 Moreover, U.S.A. Waste is a necessary party under *R.* 4:28–1 because its property may be affected by the outcome of this litigation. Rule 4:28–1 requires joinder of parties if "the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest." Many jurisdictions have so concluded in the context of fraudulent transfer litigation. *See Simmons v. Clark Equipment Credit Corp.,* 554 *So.*2d 398, 399 (Ala.1989)

(finding that a grantee that still retains title to the property is a necessary party to fraudulent conveyance litigation); *Sylvester v. Sylvester*, 723 *P.*2d 1253, 1259 (Alaska 1986) (stating that transferees are indispensable parties in actions to recover fraudulent conveyances); *Gerow v. Covill*, 192 *Ariz.* 9, 960 *P.*2d 55, 59–60 (Ct.App.1998) (explaining that a grantee is a necessary party in an action to set aside a fraudulent conveyance but not an indispensable party where it is possible for the court to fashion a remedy that does not adversely affect the rights of that grantee); *American Nat'l Bank & Trust Co. v. Davis*, 241 *Ga.* 333, 245 *S.E.*2d 291, 292 (1978) (reversing trial court order dismissing complaint against grantee for failure to state a claim because a grantee is a necessary and indispensable party); *Tanaka v. Nagata*, 76 *Hawai'i* 32, 868 *P.*2d 450, 453 (1994) (holding that a transferee or anyone claiming an interest in the property is a necessary party to a fraudulent transfer action); *Phillips v. Great Southern Mortgage & Loan Corp.*, 350 *So.*2d 1279, 1281–82 (La.Ct.App.1977) (stating the well-settled rule that a creditor must join all transferors and transferees in an action to avoid a transfer because they are indispensable parties); *Mihajlovski v. Elfakir*, 135 *Mich.App.* 528, 355 *N.W.*2d 264, 267 (1984) (grantee who retains interest in property is an indispensable party); *Tsiatsios v. Tsiatsios*, 144 *N.H.* 438, 744 *A.*2d 75, 80 (1999) (transferee who retains interest in property is necessary party); *Fraley Ins. Agency v. Johnston*, 784 *P.*2d 430 (Okla.Ct.App.1989) (transferee claiming interest in property is necessary and indispensable party); *Eagle Pacific Ins. Co. v. Christensen Motor Yacht Corp.*, 85 *Wash.App.* 695, 934 *P.*2d 715, 720 (1997) (allowing judgment, adjusted for value of the transferred asset, to be entered against a subsequent transferee without a showing that the transferee intended to assist the debtor defraud the creditor). *See also* Ralph P. Ferrara & Richard T. Kaltenbach, *Fraudulent Conveyance Cases: A Primer for Both Creditors' and Debtors' Attorneys*, 204 *N.J. Lawyer* 22, 26 (2000) (instructing a transferee on appropriate defenses to avoid an avoidance of a transfer or judgment).

In sum, we conclude the allegations the DEP asserted in its complaint against U.S.A. Waste were sufficient to state a cause of action because U.S.A. Waste is a necessary party and is a transferee of assets alleged to have been fraudulently transferred under the Act. That conclusion advances the intent of the Legislature which has directed that the Act be applied and construed in a uniform manner among the states enacting it. *N.J.S.A.* 25:2–33. Accordingly, the court erred in dismissing the DEP's complaint against U.S.A. Waste.

Accordingly, we affirm that aspect of the order entered on October 22, 1999 granting U.S.A. Waste's motion to dismiss the complaint as time-barred as to the transfer of Caldeira Brothers only. We reverse that aspect of the October 22, 1999 order to the extent it dismissed the complaint against U.S.A. Waste as a subsequent transferee for failure to state a claim upon which relief can be granted. We reverse that aspect of the order entered on October 22, 1999 that denied Caldeira, Sr.'s motion to dismiss the complaint as time-barred as to the transfer of the stock of Caldeira Brothers. We affirm that aspect of the November 10, 1999 order granting Caldeira, Jr.'s motion to dismiss the complaint as time-barred as to the transfer of Caldeira Brothers only. To the extent the complaint was dismissed with respect to the $600,000 debt forgiveness, we reverse as to all defendants. We decline to consider the issue of Caldeira, Sr.'s transfer of his shares in Forcees because Caldeira, Jr.'s motion to dismiss is still pending. Count two of the complaint is dismissed as time-barred under *N.J.S.A.* 25:2–31b as to all defendants.

The matter is remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

Affirmed in part; reversed in part and remanded.