STATE OF NEW JERSEY, PLAINTIFF, v. MARION R. OWEN, DEFENDANT.

Decided March 22d, 1945.

For the plaintiff, *Walter D. Van Riper,* Attorney-General (by *Robert Peacock,* Deputy Attorney-General).

*Marion R. Owen, pro se.*

BURLING, C. C. J. and S. C. C. Motion has been made before me to strike out the answer filed by the defendant in the above entitled cause for the following reasons: (1) The answer is sham and frivolous and filed for the purpose of delay, and (2) the answer does not contain a legal defense to said complaint, and for summary judgment.

Summons was issued and the complaint was filed in this matter by the State of New Jersey, and it thereby seeks to recover a judgment against the defendant for the amount of unpaid rent under the terms of a riparian lease. The complaint is terse and as follows:

"1. The defendant, Marion R. Owen, made application for a lease for riparian lands belonging to the plaintiff along the Atlantic Ocean in the city of Atlantic City, county of Atlantic and state of New Jersey, in accordance with the provisions of Sec. 12:3-2 *et seq.* of the revised statutes, *N. J. S. A.* 12:2-2.

"2. In accordance with said application the board of commerce and navigation granted a lease to the defendant dated December twenty fourth, nineteen hundred and thirteen, which was accepted by the defendant at an annual rental of Two Hundred Thirty one Dollars.

"3. The defendant defaulted in the payment of said rental and the lease was foreclosed on March 6, 1926.

"4. The amount of rental due from the date of the last payment is Twelve Hundred Fifty four Dollars and Sixty five cents and interest to date amounting to Thirteen Hundred Ninety one Dollars and fifty four cents, making a total of $2,646.19..

"5. Demand has been made upon the said defendant for the amount due plaintiff, but he has refused and still refuses to pay the same.

"6. The comptroller of the state of New Jersey has requested the attorney general to bring this suit for money due the state in accordance with *R. S.* 52:19–13; *N. J. S. A.* 52:19–13.

"Judgment will be demanded in the sum of $2,646.19."

Said lease was executed by the Riparian Commissioners of the State of New Jersey and approved and signed by the Acting Governor and the defendant, pursuant to written application of the defendant, as the then alleged riparian owner of the adjoining lands referred to in said lease, in accordance with provisions of the law then existing and now contained in *R. S. Title* 12, *ch.* 3; *N. J. S. A. Title* 12, *ch.* 3.

The lease provided for an annual rental of two hundred and thirty-one dollars ($231.00) in two equal one-half yearly payments in advance, the first one-half yearly rental to be paid on the delivery of the lease, and thereafter one-half yearly rentals were to be paid in advance on the 24th days of June and December of each and every year.

The defendant, not being an attorney, filed an inartifically drawn and not technically precise answer. The motion in this matter is in the nature of a general demurrer and attacks the substance and not the form of the answer. Upon the presenttaion of the motion, the plaintiff supported its position by affidavits and exhibits and the defendant appeared *pro se* and opposed the motion without the benefit of supporting affidavits of his position. The hearing upon the motion was adjourned to afford the defendant an opportunity to obtain an attorney. Upon the adjourned return day of the motion, the defendant still appeared *pro se* and lodged an informal affidavit with the court. Argument was thereupon made by the Deputy Attorney-General and by the defendant and a brief was filed by the Deputy Attorney-General and a memorandum was filed by the defendant.

Under the unusual circumstances, the court has endeavored to ferret out of the answer the substantive defenses of the defendant to the action, and they appear to be as follows: 1. General denial of liability; 2. Statute of limitations; 3. Denial of state ownership; 4. (a) Set-off for value of forty acres of land in which it is alleged the defendant had an

interest and which were taken by the Board of Commerce and Navigation, successor to the Riparian Commissioners, *R. S.* 12:2–1; *N. J. S. A.* 12:2–1, without just compensation and without process of law, and (b) refund for alleged payment of municipal taxes upon lands within the confines of the riparian lease made under assessment by the municipality upon the riparian owner.

*General Denial of Liability*—As to the plea of general issue, in the case of *Ooykendall* v. *Robinson* (*Court of Errors and Appeals,* 1876), 39 *N. J. L.* 98 (at *p.* 99), it was held at common law that the judges repeatedly exercised in a great variety of cases, the power to strike out sham pleas. This rule was applied to the general issue as well as to other pleas, where it appeared to be a sham plea. No reason can be assigned why a defendant should be permitted to shelter himself from the power of the court to strike out a false plea, by taking refuge under the general issue. And further (at *p.* 101) "The inquiry is simply whether there is, in truth, any question of fact to try, and if not, if the defense is a mere pretense, it should be summarily swept away." And in the case of *Torricelli* v. *Sebastini* (*Supreme Court,* 1933), 112 *N. J. L.* 458 (at *p.* 460); 171 *Atl. Rep.* 526 (at *p.* 527), it was held "But in this state it is well settled that the power to strike out sham pleas applies to the general issue." To the extent therefor to which the allegations of the plaintiff are supported in fact and not controverted in fact, this defense is vulnerable. The execution of the lease is admitted. It is not denied that there was unpaid under the terms of the lease installments for rent which became due as follows: On June 24th, 1921, $115.50; on December 24th, 1921, $115.50; on June 24th, 1922, $115.50; on December 24th, 1922, $115.50, and on June 24th, 1923, $115.50.

It is contended by the plaintiff that the amount due is to be calculated until the state re-entered (March 6th, 1926) in the manner prescribed by statute (*R. S.* 12:3–49 and 50; *N. J. S. A.* 12:3–49 and 50) whereas the defendant maintains that the terminal point is the date mentioned in the notice (July 20th, 1923) prescribed *R. S.* 12:3–51 and 52; *N. J. S. A.* 12:3–51 and 52. The court is inclined to the latter

view since *R. S.* 12:3–56; *N. J. S. A.* 12:3–56, provides as follows:

"12:3–56. Rights of state as to unpaid rentals not affected. All rights, at law or in equity, which had accrued to the state for the rentals in arrears and unpaid up to the expiration of the time fixed in the notice mentioned in sections 12:3–51 and 12:3–52 of this Title shall not abate but shall remain in force and effect."

*Statute of Limitations:* The last principal payment that became due was therefore on June 24th, 1923. *R. S.* 2:24–15; *N. J. S. A.* 2:24–15, provides as follows:

"2:24–15. Twenty Years. Actions by state for real estate or rents, issues or profits thereof. No person or body politic or corporate shall be sued or impleaded by the state of New Jersey for any real estate or for any rents, revenues, issues or profits thereof, except within twenty years after the right, title or cause of action to the same shall accrue."

*R. S.* 12:3–48; *N. J. S. A.* 12:3–48 provides as follows:

"12:3–48. The state treasurer shall, on or before the first Tuesday in January in each year, make out a list of all riparian leases held by the state on which rentals are in arrears and unpaid for the space of one year and transmit the same to the board of commerce and navigation."

This would indicate legislative intent to require a prompt resort to the collection of the debt and to obtain possession of leased premises upon default.

In a recent case, *Trustees, &c., Public Schools* v. *Ott & Brewer Co.,* 135 *N. J. Eq.* 174 (at *p.* 177); 37 *Atl. Rep.* (*2d*) 832, 833, the matter of a statute of limitation in relation to the government was dealt with, wherein it was held:

"Broadly stated, it is a rule of universal recognition that a statute of limitation should not be construed to encircle the government unless it is manifest from the mischief to be reached, the express language employed or by necessary implication therefrom, that the government was in the contemplation of the legislature. The doctrine is distinguished by the ancient and familiar maxim, *'Nullum tempus occurrit regi.'* We are told that it probably exists, in some form, in the jurisprudence of every civilized people. It springs from

the superior and pre-eminent policy to preserve public rights, revenues and property from injury and loss otherwise resulting from the inadvertence or neglect of public agents. In a representative government under which the people act only through the authority delegated to their agents, the reasons for the application of the doctrine continue to be cogent. The principle has been received with favor by our courts. *Cross* v. *Mayor, &c., of Morristown,* 18 *N. J. Eq.* 305; *Trustees of Public Schools* v. *City of Trenton,* 30 *N. J. Eq.* 667; *Jersey City* v. *Hall,* 79 *N. J. L.* 359; 76 *Atl. Rep.* 1058."

It is obvious that in the express language of the limitation statute, the government was in contemplation of the legislature, still the plaintiff asserts that the rents derived from the riparian lands are trust funds and in its brief maintains:

"Riparian lands and the income and rents therefrom are held upon a public trust and litigation concerning them is not a proper subject to which a statute of limitations is applicable. *R. S.* 18:10–5 and 6 appropriate such lands and the income therefrom to the Board of Trustees for the Support of Public Schools. This income is as much dedicated to a public trust as our highways and other public properties are dedicated to a public trust and not subjected to the application of a statute of limitations. The moneys derived from the sale of riparian lands are dedicated to the public schools, as set forth in article IV, section 7, paragraph 6 of the New Jersey Constitution."

The constitutional amendment of 1875, article 4, section 7, paragraph 6; *N. J. S. A.* 4:7–6, provides as follows:

"The fund for the support of free schools and all money, stock and other property, which may hereafter be appropriated for that purpose, or received into the treasury under the provision of any law heretofore passed to augment the said fund, shall be securely invested, and remain a perpetual fund; and the income thereof, except so much as it may be judged expedient to apply to an increase of capital, shall be annually appropriated to the support of public free schools, for the equal benefit of all the people of the state, * * *."

At the time of the execution of the lease (December 24th, 1913) and of the defaults thereunder and at the present time,

all lands belonging to this state now or formerly lying under water were appropriated for the support of public schools, and moneys received from the sale and income from leases thereof became part of the permanent trust school fund. *R. S.* 18:10–5 and 6; *N. J. S. A.* 18:10–5 and 6. The predecessors of said act are *Pamph. L.* 1903 *2d Sp. Sess., ch.* 1, *art.* 168 and 169, and the act of 1894, page 123. Reference to the latter is had in the opinion of Mr. Justice Swayze, in the case of *Attorney-General* v. *Sooy Oyster Co.,* 78 *N. J. L.* 394 (at *p.* 437); 75 *Atl. Rep.* 211, 228, as follows:

"The act of 1869 creating the riparian commission appropriated such income, first to the administrative purposes of the commission, then to the payment of the state debt, and finally to the trustees for the maintenance of free schools. *Pamph. L.* 1869, *p.* 1017. The act of 1871 devoted such receipts to the support of free schools. *Pamph. L.* 1871, *p.* 98. The act of 1890 devoted them to the necessary expenses of the state (*Pamph. L.* 1890, *p.* 92) and the act of 1894 finally appropriated them to the support of free public schools. * * * Of course, under the constitutional provision upon this subject, the revenue now in hand, whether derived from this or any other source, cannot be diverted to other uses; * * *."

Plaintiff relies upon the case of *Jersey City* v. *Hall (Court of Errors and Appeals,* 1910), 79 *N. J. L.* 559; 76 *Atl. Rep.* 1058. In this case a similar section in an older statute was invoked by the defendant in an action of ejectment instituted by public authority for the recovery of lands of the state covered by tidewater, and it was held therein not to be a bar. At page 567 of 79 *N. J. L.,* at page 1060 of 76 *Atl. Rep.,* the court said:

"The twentieth section of "An act for the limitation of actions" is invoked as a bar. *Gen. Stat., p.* 1978. It reads as follows:

" 'That no person or persons, bodies politic or corporate shall be sued or impleaded by the state of New Jersey for any lands, tenements or hereditaments or for any rents, revenues, issues or profits thereof, but within twenty years after the right, title or causes of action to the same shall accrue, and not after.'

"This is an old statute, passed originally in 1799 and has remained on the books without change to the present time. Whether, when the legislature enacted it, they had in contemplation lands under tidewaters, inasmuch as at that date it had not yet been settled that such lands were owned by the state, need not for present purposes be discussed as a basis for an argument that the act is inapplicable, a principle of construction hinted at in the opinion of Mr. Justice Reed in *Green* v. *Trenton,* 54 *N. J. L.* 92 (at *p.* 100) ; 23 *Atl. Rep.* 281. There were at that date lands held by the state under conveyances for the purposes of government and for its public institutions; lands acquired by foreclosure, and yet others that need not now be specified, which would be appropriately affected by this statute."

In 54 *Amer. Juris., art.* 393 the rule is declared as follows:

"393. Against states in suits by them. The general principles as to the immunity of the Sovereign from laches and statutes of limitations which arose in England, have been applied in reference to the states of the American Union. Unless the statute provides to the contrary or unless the state is necessarily included by the nature of the mischiefs to be remedied, statutes of limitation do not apply to a state when suing in its sovereign capacity. Even though the suit is not brought in the state's name a similar rule prevails if the action is for the sole benefit of the state. * * *

"The state may, of course, make such regulations as to limitations as it sees fit. By statute, in some states, it is provided that limitation laws shall apply to the state the same as to individuals. A law making the statute run against the state has been held, however, not to apply to property held in trust by the state and the conclusion has been reached that in such cases the state's title cannot be lost by adverse possession."

*R. S.* 2 :24–15; *N. J. S. A.* 2 :24–15, is not applicable. This defense is struck out.

*Denial of State Ownership*—The lessee cannot renounce the title or the right of the state to lease after having made application for and executed a lease. In *Zabriskie* v. *Sullivan, (Supreme Court,* 1910), 80 *N. J. L.* 673 (at *p.* 674) ; 77

*Atl. Rep.* 1075; *affirmed* (*Court of Errors and Appeals,* 1911), 82 *N. J. L.* 545; 81 *Atl. Rep.* 1135, it was held:

"\* \* \* it is not perceived how the defendant, after entering into a formal lease with the plaintiff under which he has continued in possession, all the while paying the rent reserved, can deny his landlord's title. *Howell* v. *Ashmore,* 2 *Zab.* 261. This rule also estops the tenant from showing that the lease is imperfectly executed; it extends to a tenant holding over, is applicable to every species of tenancy including that at sufference, and may be invoked in an action of debt, *assumpsit,* covenant or ejectment. See *Tayl. L. & T.* (*7th ed.*) ¶¶ 705, *et seq.,* where the rule is stated and the cases are collected."

This defense is struck out.

*The Fourth and Remaining Defense.* (a) Set-off for value of forty acres of land in which it is alleged the defendant had an interest and which were taken by the Board of Commerce and Navigation, successor to the Riparian Commissioners, *R. S.* 12:2–1; *N. J. S. A.* 12:2–1, without just compensation and without process of law. In the case of *Empire Trust Co.* v. *Board of Commerce, &c.* (1904), 124 *N. J. L.* 406 (at *p.* 409); 11 *Atl. Rep.* (2d) 752, 754, it was held:

"It is embedded in our jurisprudence that the state is not suable in its own courts without its consent, and that a suit brought against a state agency is, in fact a suit against the state if the judgment sought would operate to control the action of the state or subject it to liability. This immunity is an attribute of sovereignty. *Strobel Steel Construction Co.* v. *State Highway Commissioner,* 120 *N. J. L.* 298; 198 *Atl. Rep.* 774. In that case our court of last resort rules that the State Highway Commissioner is an "alter ego of the state" and that the provisions of the statute creating the office and defining the incumbent's powers and duties do not reveal a legislative purpose to waive this sovereign right of exemption to suit as regards that state agency; and we are not cited to any statutory provision that places the State Board of Commerce and Navigation in a different category. We find nothing in the act delineating the authority of this agency that betokens an intent to waive the state's

immunity from suit and to expose it to the judicial process. *R. S.* 1937, 12:1–1, *et seq.; N. J. S. A.* 12:1–1, *et seq.* See *Federal Housing Administration Region No.* 4 v. *Burr,* 309 *U. S.* 242; 60 *S. Ct.* 488; 84 *L. Ed.* 724."

The remedy, if proper, may be found in *R. S.* 12:3–64; *N. J. S. A.* 12:3–64, and in timely compulsion to action by the state by *mandamus* proceedings. The defendant further relies in support of this defense upon the decision in *Penrose* v. *Absecon Land Co.* (*Court of Errors and Appeals,* 1922), 94 *N. J. Eq.* 436; 120 *Atl. Rep.* 207. Assuming that the land in the litigation referred to in said opinion is the land referred to in the attempted counter-claim, it is to be noted the decision was adverse to this defendant.

This defense and counter-claim struck out.

(b) Refund for alleged payment of municipal taxes upon lands within the confines of the riparian lease made under assessment by the municipality upon the riparian owner. If true, the relief was not by this method but rather by proper and timely review of the municipal assessment.

This defense and counter-claim is struck out.

*Conclusion.* Rule may be presented in accordance with these conclusions. Since this is a Supreme Court issue, as Supreme Court Commissioner no power exists to make an order for summary judgment. Supreme Court rule 84; *N. J. S. A. tit.* 2. *National Surety Co.* v. *Mulligan* (*Court of Errors and Appeals,* 1928), 105 *N. J. L.* 336 (at *p.* 338); 146 *Atl. Rep.* 372; *Milberg* v. *Keuthe* (*Court of Errors and Appeals,* 1923), 98 *N. J. L.* 779; 121 *Atl. Rep.* 713. There is to be included in the aforesaid rule, a recommendation pursuant to the practice referred to in *Levine* v. *Aetna Casualty and Surety Co.* (*Supreme Court*), 8 *N. J. Mis. R.* 156 (at *p.* 159); 149 *Atl. Rep.* 762, and *Bolton* v. *Bolton* (*Supreme Court,* 1914), 86 *N. J. L.* 69 (at *p.* 73); 89 *Atl. Rep.* 1014, that judgment be entered for the plaintiff against the defendant in the principal sum as follows:

1. In the principal sum of $115.50 which became due on June 24th, 1921.

In the principal sum of $115.50 which became due on December 24th, 1921.

In the principal sum of $115.50 which became due on June 24th, 1922.

In the principal sum of $115.50 which became due on December 24th, 1922.

In the principal sum of $115.50 which became due on June 24th, 1923.

Or a total principal sum of $577.50.

2. With interest on said sums as follows:

On the sum of $115.50 from June 24th, 1921, to date of judgment.

On the sum of $115.50 from December 24th, 1921, to date of judgment.

On the sum of $115.50 from June 24th, 1922, to date of judgment.

On the sum of $115.50 from December 24th, 1922, to date of judgment.

On the sum of $115.50 from June 24th, 1923, to date of judgment, together with costs of suit.