794 A.2d 156 (2002)
171 N.J. 404
STATE of New Jersey DEPARTMENT OF ENVIRONMENTAL PROTECTION, Plaintiff-Appellant,
v.
Joseph J. CALDEIRA, Jr., individually, and as Owner, Operator, Manager, Director, Officer and/or Shareholder of Forcees, Inc., and Caldeira Brothers, Inc., Joseph J. Caldeira, SR., individually, and, as prior Owner, Operator, Manager, Director, Officer and/or Shareholder of Forcees, Inc., Caldeira Brothers, Inc., and Southern Ocean Landfill, Inc., and U.S.A. Waste Recycling of New Jersey, Inc., a corporation of the State of New Jersey and corporate successor to Caldeira Brothers, Inc., Defendants-Respondents, and
Southern Ocean Landfill, Inc., a corporation of the State of New Jersey, Defendant.
Supreme Court of New Jersey.
Argued January 15, 2002.
Decided April 8, 2002.
*157 Lisa Tichauer Wahler, Deputy Attorney General, argued the cause for appellant (David N. Samson, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel).
James O'Toole, Jr., Philadelphia, PA, argued the cause for respondent U.S.A. Waste Recycling of New Jersey, Inc.(Saul Ewing, attorneys; Mr. O'Toole, Jane Kozinski, Princeton, James A. Keller Philadelphia, *158 PA and Jennifer M. Vlack, Princeton, on the briefs).
Kevin N. Starkey, Toms River, argued the cause for respondent Joseph J. Caldeira, Sr., etc. (Starkey Kelly Blaney & White, attorneys; Charles E. Starkey, of counsel; Dina R. Khajezadeh, on the briefs).
David J. Haber, Little Silver, submitted a brief on behalf of respondents Joseph J. Caldeira, Jr., etc., Forcees, Inc. and Caldeira Brothers, Inc.
The opinion of the Court was delivered by LONG, J.
We are called on here to resolve the question of which statute of limitations should apply to a fraudulent transfer action brought by the State Department of Environmental Protection (DEP). Implicated are the one- and four-year limitations set forth in the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-31; the ten-year limitation that generally applies to civil actions brought by the State under N.J.S.A. 2A:14-1.2; and the statute of limitations governing actions in connection with a landfill closure, N.J.S.A. 58:10B-17.1. The Appellate Division ruled that the four-year UFTA statute barred the DEP action. We hold that in these circumstances the DEP action was timely under the ten-year limit of N.J.S.A. 2A:14-1.2. We therefore reverse and remand the case for trial.

I
Under the common law doctrine of nullum tempus occurrit regi, which literally means "no time runs against the king," a statute of limitations did not bar an action brought by the government. New Jersey Dep't of Envtl. Protection v. Larchmont Farms, Inc., 266 N.J.Super. 16, 34, 628 A.2d 761 (App.Div.1993), certif. denied, 135 N.J. 302, 639 A.2d 301 (1994). Originally established in England and incorporated into American law after the colonial period, the nullum tempus doctrine was based on the theory that "the king was too busy protecting the interests of his people to keep track of his lands and to bring suits to protect them in a timely fashion." Devins v. Borough of Bogota, 124 N.J. 570, 576, 592 A.2d 199 (1991); New Jersey Educ. Facilities Auth. v. Conditioning Co., 237 N.J.Super. 310, 316, 567 A.2d 1013 (App.Div.1989), aff'd in part and rev'd in part sub nom, New Jersey Educ. Facilities Auth. v. Gruzen Partnership, 125 N.J. 66, 592 A.2d 559 (1991); see also United States v. Thompson, 98 U.S. (8 Otto) 486, 489, 25 L.Ed. 194, 195 (1878) ("It was deemed important that, while the sovereign was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants.").
Specifically, under New Jersey law prior to 1991 the nullum tempus doctrine provided that "statutes of limitation do not run against any civil action brought by the State or any of its agencies and subdivisions, unless the Legislature so allows by express language or necessary implication." New Jersey Educ. Facilities Auth., supra, 237 N.J.Super. at 317, 567 A.2d 1013. Presumably, the requirements of express language or necessary implication to trump nullum tempus were strictly construed. Indeed, in no reported case in which the State invoked the doctrine of nullum tempus was a statute of limitations ever held to meet those requirements.
On the contrary, nullum tempus was resorted to regularly by the courts to avoid applying statutes of limitation against the State. See, e.g., State v. Owen, 23 N.J. Misc. 123, 41 A.2d 809 (Sup.Ct. 1945) (finding that N.J.S.A. 2:24-15, current version at N.J.S.A. 2A:14-8, did not *159 bar State attempt to recover unpaid rent under terms of riparian lease); Livingston Bd. of Educ. v. United States Gypsum Co., 249 N.J.Super. 498, 592 A.2d 653 (App.Div. 1991) (holding that N.J.S.A. 12A:2-725 did not abrogate nullum tempus even though it included the term "parties," and that school district was state agency against whom statute of limitations for seeking recovery of asbestos removal costs did not run); State v. Scientific Coating Co., 228 N.J.Super. 320, 549 A.2d 874 (App.Div. 1988) (allowing action against asbestos removal contractor because nullum tempus applied and not statute of limitations set forth in N.J.S.A. 2A:14-1); Port Auth. of New York and New Jersey v. Bosco, 193 N.J.Super. 696, 475 A.2d 676 (App.Div. 1984) (allowing action to recover duplicate payments made to policemen for their tuition because nullum tempus applied and not statute of limitations set forth in N.J.S.A. 2A:14-1); Veterans Loan Auth. v. Wilk, 61 N.J.Super. 65, 160 A.2d 138 (App. Div.1960) (allowing action on promissory note because nullum tempus applied and not statute of limitations set forth in N.J.S.A. 2A:14-1); Trustees for the Support of Public Schools v. Ott & Brewer Co., 135 N.J.Eq. 174, 178, 37 A.2d 832 (Ch. 1944) (holding that because fund was dedicated to public schools, it "c[ould] not be supposed that the legislature in the enactment of statutes of limitation intended to forbid the recovery of a loan made from that fund because of a delinquency in its collection").
In a series of 1991 opinions, we abolished the nullum tempus doctrine "insofar as it would preclude the application of general statutes of limitations to the State." Gruzen Partnership, supra, 125 N.J. at 76, 592 A.2d 559; see also Holloway v. State, 125 N.J. 386, 397, 593 A.2d 716 (1991) (recognizing abolishment of nullum tempus doctrine); Devins, supra, 124 N.J. at 579, 592 A.2d 199 (abolishing nullum tempus doctrine as to municipally-owned real estate not dedicated to or used for a public purpose). In response to the abrogation of the doctrine, the Legislature enacted N.J.S.A. 2A:14-1.2. New Jersey Transit Corp. v. Borough of Somerville, 139 N.J. 582, 587, 661 A.2d 778 (1995). That statute provides a general ten-year limitations period for actions brought by the State or its agencies:
Except where a limitations provision expressly and specifically applies to actions commenced by the State or where a longer limitations period would otherwise apply, and subject to any statutory provisions or common law rules extending limitations periods, any civil action commenced by the State shall be commenced within ten years next after the cause of action shall have accrued.
[N.J.S.A. 2A:14-1.2(a) (emphasis added).]
It is the interplay between N.J.S.A. 2A:14-1.2(a) and two other statutes that is at issue here.
N.J.S.A. 25:2-31 provides a four-year statute of limitations for actions concerning fraudulent transfers generally, as well as a one-year discovery provision for actions alleging actual fraud:
A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:
a. Under [N.J.S.A. 25:2-25(a) (actual fraud)], within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; [or]
b. Under [N.J.S.A. 25:2-25(b) (constructive fraud) ], ... within four years after the transfer was made or the obligation was incurred[.]
*160 [ (Emphasis added).]
In addition, on July 13, 2001, a bill creating a new statute of limitations for certain environmental claims was signed into law. L.2001, c. 154, § 5, (codified at N.J.S.A. 58:10B-17.1). It provides:
(1) Except where a limitations provision expressly and specifically applies to actions commenced by the State or where a longer limitations period would otherwise apply, and subject to any statutory provisions or common law rules extending limitations periods, any civil action concerning the remediation of a contaminated site or the closure of a sanitary landfill facility commenced by the State pursuant to the State's environmental laws shall be commenced within three years next after the cause of action shall have accrued.
(2) [N]o cause of action shall be deemed to have accrued prior to January 1, 2002 or until the contaminated site is remediated or the sanitary landfill has been properly closed, whichever is later.
[(Emphasis added).]
The parties' arguments on this appeal center on the applicability of those statutes, the outcome depending on which limitations period prevails.

II
Prior to and including 1988, Joseph Caldeira, Sr. was the owner and operator of the Southern Ocean Landfill, Inc. (SOLF), an entity that operated a sanitary landfill in Ocean County. He also owned and operated Caldeira Brothers, a solid waste collection utility company, and Forcees, Inc., an equipment leasing company that provided equipment exclusively for his solid waste entities.
In 1988, the landfill operated by SOLF had reached its permitted capacity and stopped accepting waste. In accordance with the Sanitary Landfill Facility Closure and Contingency Fund Act (Closure Act), N.J.S.A. 13:1E-100 to -176, SOLF submitted a closure plan to the DEP. The estimated closure and post-closure costs were reported to be approximately $23 million.
In 1989, Caldeira, Sr. transferred 99% of his stock in Caldeira Brothers to his son, Joseph Caldeira, Jr., "[i]n consideration of the valuable services provided" to Caldeira Brothers by Caldeira, Jr. The Board of Public Utilities (BPU) approved the transfer in an order dated December 22, 1989. During the same period in 1989, Caldeira, Sr. transferred his entire interest in Forcees to Caldeira, Jr., allegedly for no consideration. In 1991, Caldeira, Sr., on behalf of SOLF, and Caldeira, Jr., on behalf of Caldeira Brothers, entered into an agreement whereby SOLF forgave $600,000 of indebtedness for "tipping fees" that Caldeira Brothers owed to SOLF.
Effective August 19, 1991, the responsibilities for solid waste economic regulation, including responsibility for the oversight and administration of escrow funds in landfill closure accounts, were transferred from the BPU to the DEP pursuant to Reorganization Plan No. 002-1991, N.J.S.A. 13:1D-1.
On April 27, 1992, Caldeira, Sr. submitted a sworn "Personal History Disclosure Statement" to the Division of Solid Waste Management, declaring that he no longer owned Caldeira Brothers. By December 13, 1993, the Division of Solid Waste Management of the DEP knew that Caldeira, Jr. had transferred the assets of Caldeira Brothers to Mid-Jersey Disposal Company, Inc. for $600,000 on August 5, 1993. In addition, the Solid Waste Management Division knew, through "Annual Business Concern Disclosure Statements," that Caldeira, *161 Jr. transferred his interest in Forcees to Envirofil, Inc. for $822,000 on March 3, 1993; that Envirofil acquired the stock of Mid-Jersey Disposal Company, Inc. on February 28, 1994; and finally, that USA Waste acquired the stock of Envirofil on May 27, 1994. USA Waste is the current owner of all of the assets in question.
On November 24, 1997, the DEP filed a Closure Act enforcement proceeding against SOLF and Caldeira, Sr., both individually and as owner of SOLF. The DEP alleged that spillage of leachate from the landfill into the area surrounding it was imminent and threatened the surrounding environment; that the defendants had improperly operated the landfill; and that they had failed to implement a closure and post-closure care plan in violation of the Closure Act. At that time, only $1.69 million remained in the DEP escrow closure account, although the cost of properly closing the landfill was approximately $14 million.
It was on April 30, 1998, during discovery in the closure action, that the DEP received a letter documenting the transfers made by Caldeira, Sr. to Caldeira, Jr. and the $600,000 debt forgiveness. The DEP claims that its receipt of that letter was the first time it learned of those events.
On April 23, 1999, the DEP filed a civil action against Caldeira, Sr., Caldeira, Jr., SOLF, Caldeira Brothers, Inc., and USA Waste. The complaint, filed under the UFTA, N.J.S.A. 25:2-20 to -34, alleged that the transfer of Caldeira Brothers and Forcees to Caldeira, Jr., and the $600,000 debt forgiveness were made "with the intent to hinder, delay or defraud the Department in the Department's attempt to ensure that adequate funds would be available for funding the closure of [SOLF]" in violation of N.J.S.A. 25:2-25(a), and "without receiving a reasonably equivalent value in exchange" in violation of N.J.S.A. 25:2-25(b). Among other things, the prayer for relief requested that the transfers be voided, an accounting take place, the proceeds of the transfers be held in escrow to underwrite the closure of SOLF's landfill, and an injunction issue to preclude Defendants from interfering with those proceeds.
In August 1999, USA Waste filed a motion to dismiss for failure to state a claim on which relief could be granted and for failure to comply with the applicable UFTA statute of limitations. Caldeira, Jr., individually and on behalf of Caldeira Brothers and Forcees, and Caldeira, Sr. joined in the motion to dismiss. The trial court, treating the motion as one for summary judgment, held that, as against U.S.A. Waste and Caldeira, Jr., the complaint was time-barred under the four-year statute of limitations period provided in N.J.S.A. 25:2-31 with respect to the transfer of ownership in Caldeira Brothers and the $600,000 debt forgiveness because the DEP had notice of that transaction. The court refused to dismiss the complaint regarding the Forcees transfer because there was no proof that the DEP had notice of it more than a year prior to litigation. With respect to Caldeira, Sr., the court held that the UFTA claims were not time-barred, because Caldeira, Sr. was a party to the closure action and the general ten-year statute of limitations under N.J.S.A. 2A:14-1.2 applied to him. Caldeira, Jr.'s motion for reconsideration regarding the Forcees transfer is currently pending in the Law Division.
The DEP appealed, and both Caldeiras cross-appealed. The Appellate Division affirmed in part and reversed in part, New Jersey Department of Environmental Protection v. Caldeira, 338 N.J.Super. 203, 768 A.2d 782 (App.Div.2001), holding that *162 the UFTA statute of limitations applied to all of the defendants, including Caldeira, Sr. Id. at 218, 768 A.2d 782. The court reasoned that the term "claimant" in the UFTA statute of limitations is synonymous with "creditor;" that that term is defined by the UFTA as a "person who has a claim;" and that the statutory definition of "person" includes a governmental agency. Id. at 215, 768 A.2d 782 (citing N.J.S.A. 25:2-21 (defining "creditor") and N.J.S.A. 25:2-22 (defining "person")). Accordingly, the court affirmed the trial court's conclusion that the DEP's UFTA claims are barred by the UFTA four-year statute of limitations because the transfers and debt-forgiveness occurred in 1989 and 1991. Id. at 218, 768 A.2d 782. In so holding, the panel reversed the trial court's conclusion to the extent that it applied the general ten-year limitations period to the claims against Caldeira, Sr. Ibid.
The Appellate Division also held that the DEP's claims of actual fraud with respect to the transfer of Caldeira Brothers were out of time under the UFTA one-year discovery provision but that the actual fraud claims regarding the transfer of Forcees and the $600,000 debt forgiveness might be timely. Id. at 222, 768 A.2d 782. Specifically, the panel found that the claim regarding the Caldeira Brothers transfer was barred because the DEP knew or reasonably could have known about the transfer more than a year before its complaint was filed. Id. at 219-20, 768 A.2d 782. The court noted, however, that the Forcees issue is currently pending in the Law Division, and that "no competent evidence was presented to support the contention that the DEP knew, or reasonably could have known," of the debt forgiveness transaction prior to April 30, 1998. Id. at 221-22, 768 A.2d 782. Accordingly, the court did not decide whether the DEP's actual fraud claims were barred with respect to those transactions. Id. at 222, 768 A.2d 782.
This Court granted the DEP's motion for leave to appeal. 169 N.J. 597, 782 A.2d 417 (2001).

III
On appeal, the DEP argues that either the general ten-year statute of limitations or the three-year site remediation statute of limitations should apply in this case, the application of either of which would render its action timely. The DEP claims that because it brought the UFTA action in order to enforce a Closure Act violation, the UFTA limitations period is not controlling. Further, the DEP argues that the site remediation statute of limitations should apply because its claims not only "concern" a landfill closure, but are tied inextricably to the SOLF closure action because they are a vehicle for funding the closure. In addition, the DEP asserts that the UFTA statute of limitations does not "expressly and specifically" apply to actions brought by the State because the terms "state," "government," and "person" do not appear within it. Finally, according to the DEP, applying the UFTA statute of limitations will impede the agency's ability to close landfills and reward those who render themselves judgment proof in order to evade liability under the environmental laws, thereby frustrating the legislative purpose of holding landfill owners and operators liable for the operation of their facilities.
Defendants counter that the Appellate Division correctly applied the UFTA statute of limitations to this appeal because the UFTA action and the closure action are separate proceedings that serve different purposes, and the DEP should not be allowed to bootstrap its UFTA claim onto its Closure Act claim. They also argue that the UFTA claim is not a "civil action *163 concerning ... the closure of a sanitary landfill facility commenced by the State pursuant to the State's environmental laws," N.J.S.A. 58:10B-17.1(a)(1), and that the UFTA is not an environmental law at all. According to Defendants, if the DEP's interpretation is accepted, the sweep of the new site remediation statute would be tremendous because a "plethora" of tort claims concern, in some way, a contaminated site or landfill facility. Finally, they contend that the UFTA statute of limitations "expressly and specifically" applies to actions brought by the State because the statutory definition of "person" includes "governmental agency," and the statute is written broadly enough to apply to all creditors.

IV
It is well-settled that "`as a general rule of statutory construction, [courts] look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, [courts] need delve no deeper than the act's literal terms to divine the Legislature's intent.'" State v. Thomas, 166 N.J. 560, 567, 767 A.2d 459 (2001) (quoting State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982)). See also Stafford v. Stafford Zoning Bd., 154 N.J. 62, 71, 711 A.2d 282 (1998) ("To determine the legislative intent, courts turn first to the language of the statute. If the language is plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms.") (internal citation and quotation omitted); State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989) ("When a statute is clear on its face, a court need not look beyond the statutory terms to determine the legislative intent.").

V
With those principles in mind, we turn to the question of what import to ascribe to the "expressly and specifically" language of N.J.S.A. 2A:14-1.2. Those terms have well-established meanings. Express means "[c]lear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous.... not left to inference." Black's Law Dictionary 521 (5th ed.1979). Specific means "[p]recisely formulated or restricted; definite; explicit; of an exact or particular nature." Id. at 1254. Obviously, a "general" or "generic" provision, by definition, is not "specific." "General" and "specific" are antonyms. Roget's International Thesaurus 79.10, 513.17 (3rd ed.1962).
Thus, it would be fair to say that for a statute of limitations shorter than ten years to apply to the State it would have to be fairly explicit. One example that comes to mind is N.J.S.A. 2A:14-1.1(a). That statute of limitations provides in relevant part, "This limitation shall serve as a bar to all such actions[,] both governmental and private." N.J.S.A. 2A:14-1.1(a).
In contrast, the UFTA statute of limitations states only that causes of action must be brought "within four years ... or, if later within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." N.J.S.A. 25:2-31(a). The Act is silent regarding the meaning of the term "claimant." However, the UFTA does define the term "creditor" as "a person who has a claim." N.J.S.A. 25:2-21. The term "person," in turn, is defined as "an individual... government or governmental subdivision or agency." N.J.S.A. 25:2-22. Finally, "claim" is defined in the UFTA as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated,... disputed, undisputed, legal, equitable, secured or unsecured." N.J.S.A. *164 25:2-21. That is the interpretive route defendants follow to declare that the UFTA limitation applies to the State. We disagree.
In our view, the UFTA statute of limitations is a general provision that does not expressly and specifically apply to the State. It is true that the word "person" in the UFTA statute is defined to include the State. However, reliance on the definition of person is problematic because that word is not even present in the UFTA limitation clause. To be sure, an argument can be constructed to the effect that a claimant is the same as a creditor; a creditor is a person with a claim; a person is a "government or governmental subdivision or agency"and thus the DEP is a "claimant." The problem with such an attenuated connection is that it neither "expressly" nor "specifically" applies to the State.
That is what distinguishes this case from Lacey Municipal Utilities Authority v. New Jersey Department of Environmental Protection, 312 N.J.Super. 298, 711 A.2d 932 (App.Div.1998), aff'd as modified, 162 N.J. 30, 738 A.2d 955 (1999). There, the DEP denied, as time-barred, certain municipal Spill Fund claims arising from the contamination of a residential potable well. The DEP argued that the Spill Compensation and Control Act's one-year statute rather than the general ten-year statute of limitations applied to the governmental agencies making the claims. Id. at 302, 711 A.2d 932. The actual statute provided in pertinent part:

Claims shall be filed with the administrator not later than one year after the date of the discovery of damage. The administrator shall prescribe appropriate forms and procedures for such claims ... Any person who knowingly gives or causes to be given any false information as a part of any such claim shall, in addition to any other penalties herein or elsewhere prescribed, be guilty of a misdemeanor.
[N.J.S.A. 58:10-23.11k (emphasis added).]
Because the term "person" that appeared in the limitations provision, N.J.S.A. 58:10-23.11k, was defined elsewhere in the Spill Act to include governmental entities, the Appellate Division in Lacey held that it expressly and specifically referred to the municipal authority asserting the claim, thus rendering N.J.S.A. 2A:14-1.2(a) inapplicable. Ibid. Although Lacey is probably at the margin of any notion of "expressly and specifically," at least the term "person" was defined elsewhere in the statute to include governmental entities and appeared in the limitations provision. That link is absent here.
Moreover, we do not view New Jersey Transit, supra, 139 N.J. 582, 661 A.2d 778 (1995), as requiring a different result. That case involved the annual statutory deadline for filing appeals contesting a real-property tax assessment. The Court held that, like other taxpayers, New Jersey Transit was required to meet the deadline. The outcome in that case was ordained by the longstanding practice adhered to by the State under the tax law prior to the abrogation of nullum tempus, and by the common understanding under that practice that the term "taxpayer" generically included the State and its instrumentalities. Id. at 588-89, 661 A.2d 778. It was in light of that prior practice that the court in New Jersey Transit specifically observed that it would not impose a longer limitation than had existed under nullum tempus. Id. at 588, 661 A.2d 778. Nothing in that opinion suggests that in these circumstances the attenuated argument advanced by defendants meets the "expressly and specifically" standard.

*165 VI
We turn next to the recently enacted site remediation statute, N.J.S.A. 58:10B-17.1(a), that the DEP proffers as an alternative basis to declare its action timely. That statute, by its very terms, applies to a "civil action concerning the remediation of a contaminated site or the closure of a sanitary landfill facility commenced by the State pursuant to the State's environmental laws." N.J.S.A. 58:10B-17.1(a). The DEP argues that its UFTA action is really a part of its closure case, that the proceeds of the action will be used for environmental purposes, and that therefore the case "concerns the remediation of a contaminated site." If the statute did not include the words "commenced by the State pursuant to the environmental laws," the DEP's argument might have resonance. However, the addition of that language is fatal to its claim. The environmental laws and the UFTA serve different purposes and are distinct from each other. DEP's UFTA action against the former owners of a landfill to set aside a putative fraudulent transfer does not arise under the environmental laws any more than a UFTA action between physicians could be said to arise under the medical laws. The fact that the proceeds of a UFTA judgment may be spent for closure purposes does not alter or affect the fundamental nature of the underlying action as one not arising under the environmental laws. Accordingly, the site remediation statute is inapplicable here.

VII
We hold that the ten-year statute of limitations provided in N.J.S.A. 2A:14-1.2(a) is applicable to the DEP action. We thus reverse and remand the case to the trial court for such further proceedings as are warranted.
For reversing and remandingChief Justice PORITZ and Justices STEIN, COLEMAN, LONG, and ZAZZALI5.
OpposedNone.